## NICHOLS, COLLECTOR, *v.* COOLIDGE ET AL., EXECUTORS.

### ERROR TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS.

No. 88. Argued January 6, 7, 1927.—Decided May 31, 1927.

1. An absolute conveyance of real estate made without money consideration by deed to the grantor's children is not a transfer intended to take effect in possession or enjoyment at or after the grantor's death within the intendment of §402, par. (c) of the Revenue Act approved February 24, 1919, " Estate Tax," although the premises were contemporaneously' leased, by the grantees to the grantor for one year or any renewal thereof, but subject to the lessors' right to terminate the term during any year, and although the parties contemplated that the grantor should enjoy the property for residential purposes as long as she desired, but made no valid agreement to that effect. P. 538.

2. Section 402 (c), *supra*, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage, merely because the conveyance was to take effect in possession or enjoyment at or after his death, violates the Fifth Amendment. P. 542.

4 F. (2d) 112, affirmed.

ERROR to a judgment of the District Court, recovered by Coolidge and Loring, Executors, from Nichols, Collector, representing the amount of certain federal estate taxes unlawfully assessed and collected over their protest.

*Mr. Thomas H. Lewis, Jr.,* Attorney in the Bureau of Internal Revenue, with whom *Solicitor General Mitchell,*

*Mr. A. W. Gregg,* General Counsel, Bureau of Internal Revenue, and *Mr. Newton K. Fox,* Attorney in the Bureau of Internal Revenue, were on the brief, for plaintiff in error.

*Mr. Robert G. Dodge,* with whom *Mr. Harold S. Davis* was on the brief, for defendants in error.

*Messrs. Tyson S. Dines, Peter H. Holme, Harold D. Roberts, J. Churchill Owen, Abram J. Rose, Leonard B. Smith, Isaac B. Lipson, Russell L. Bradford, Henry C. Eldert, Arthur D. Hill, Richard H. Wiswall, Arthur F. Mullen,* and *Antoinette Funk* filed briefs as *amici curiae,* by special leave of Court.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Defendants in error sued to recover additional federal taxes exacted of the estate in their keeping. The cause was heard upon an agreed statement; judgment went for them on a directed verdict; and this writ of error, allowed April 3, 1925, brings the matter here. In a comprehensive charge the trial court interpreted the law, but gave no further opinion. 4 Fed. (2d) 112.

Mrs. Julia Coolidge, of Massachusetts, died January 6, 1921. As required by the Revenue Act approved February 24, 1919, c. 18, 40 Stat. 1057, 1096, the executors returned a schedule to the Collector. He estimated the gross estate at $180,184.73 and allowed $77,747.74 deductions. They paid the amount assessed upon the balance. Their return did not include certain property transferred by the decedent through duly executed deeds and without valuable consideration, some to trustees and some directly to her children. The Commissioner of Internal Revenue held that under § 402 (c) the value of all this property at her death must be included in the gross estate.

He raised the assessment accordingly and demanded the additional tax—$34,662.65—here challenged.

July 29, 1907, Mrs. Coolidge and her husband owned certain real estate in Boston, also valuable personal property, which they transferred without consideration to trustees, who agreed to hold it and pay the income to the settlors, then to the survivor, and after his death to distribute the corpus among the settlors' five children or their representatives. The deed directed that the interest of any child predeceasing the survivor should pass as provided by the statute of distribution " in effect at the time of the death of such survivor." The trustees were authorized to sell the property, to make and change investments, etc. April 6, 1917, the settlors assigned to the children their entire interest in the property, especially any right to the income therefrom. At the death of Mrs. Coolidge the trustees held property worth $432,155.35, but through sales and changes much of what they originally received had passed from their possession.

May 18, 1917, by deeds purporting to convey the fee Mrs. Coolidge—her husband joining—gave their five children two parcels of land long used by her for residences. Contemporaneously the grantees leased these parcels to the conveyors for one year at nominal rental, with provision for annual renewals until notice to the contrary. All parties understood that renewals would be made if either lessee wished to occupy the premises. When Mrs. Coolidge died the value of this property was $274,300.

Plaintiff in error now maintains the above-described transfers by Mrs. Coolidge were intended to take effect in possession or enjoyment at or after death, within the ambit of § 402 (c), Act February 24, 1919, and that the value at her death of the property held by the conveyees constituted part of her gross estate.

The court below held the transfer of the residences (1917) was absolute; the right to possess or enjoy them

did not depend upon death; and their value constituted
no part of the gross estate. Also, that under the statute
the value of the property conveyed to trustees in 1907
or resulting therefrom must be included in the gross es-
tate, but, thus construed, the Act went beyond the power
of Congress.

Relevant portions of "Title IV—Estate Tax," Act
February 24, 1919, are printed below.* It undertakes to

* Sec. 401. That (in lieu of the tax imposed by Title II of the
Revenue Act of 1916, as amended, and in lieu of the tax imposed
by Title IX of the Revenue Act of 1917) a tax equal to the sum of
the following percentages of the value of the net estate (determined
as provided in section 403) is hereby imposed upon the transfer of
the net estate of every decedent dying after the passage of this Act,
whether a resident or nonresident of the United States:

1 per centum of the amount of the net estate not in excess of
$50,000;

2 per centum of the amount by which the net estate exceeds $50,000
and does not exceed $150,000;

3 per centum of the amount by which the net estate exceeds
$150,000 and does not exceed $250,000;

4 per centum of the amount by which the net estate exceeds
$250,000 and does not exceed $450,000;

6 per centum of the amount by which the net estate exceeds
$450,000 and does not exceed $750,000;   . . .

25 per centum of the amount by which the net estate exceeds
$10,000,000.   . . .

Sec. 402. That the value of the gross estate of the decedent shall
be determined by including the value at the time of his death of all
property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the
time of his death which after his death is subject to the payment of
the charges against his estate and the expenses of its administration
and is subject to distribution as part of his estate;

(b) To the extent of any interest therein of the surviving spouse,
existing at the time of the decedent's death as dower, courtesy, or by
virtue of a statute creating an estate in lieu of dower or courtesy;

(c) To the extent of any interest therein of which the decedent
has at any time made a transfer, or with respect to which he has at
any time created a trust, in contemplation of or intended to take

lay a charge equal to the sum of specified percentages—from one to twenty-five—" of the value of the net estate . . . upon the transfer of the net estate of every

effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent;

(e) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth; and

(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

Sec. 403. That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate [specified items and an exemption of $50,000] . . .

Sec. 408. . . . If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being

decedent " dying. thereafter.   And it directs that the net
estate shall be ascertained by deducting from the gross
certain items and an exemption of $50,000.   Also, " That

the purpose and intent of this title that so far as is practicable and
unless otherwise directed by the will of the decedent the tax shall be
paid out· of the estate before its distribution.   If any part of the
gross estate consists of proceeds of policies of insurance upon the life
of the decedent receivable by a beneficiary other than the executor,
the executor shall be entitled to recover from such beneficiary such
portion of the total tax paid as the proceeds, in excess of $40,000,
of such policies bear to the net estate.   If there is more than one
such beneficiary the executor shall be entitled to recover from such
beneficiaries in the same ratio.

Sec. 409. That unless the tax is sooner paid in full, it shall be a
lien for ten years upon the gross estate of the decedent, except that
such part of the gross estate as is used for the payment of charges
against the estate and expenses of its administration, allowed by any
co٠rt having jurisdiction thereof, shall be divested of such lien.   If
the Commissioner is satisfied that the tax liability of an estate has
been fully discharged or provided for, h٠ may, under regulations
prescribed by him with the approval of the Secretary, issue his
certificate releasing any or all property of such estate from the lien
herein imposed.

If (a) the decedent makes a transfer of, or creates a trust with
respect to, any property in contemplation of or intended to take
effect in possession or enjoyment at or after his death (except in the
case of a bona fide sale for a fair consideration in money or money's
worth) or· (b) if insurance passes under a contract executed by the
decedent in favor of a specific beneficiary, and if in either case the
tax in respect thereto is not paid when due, then the transferee,
trustee, or beneficiary shall be personally liable for such tax, and
such property, to the extent of the decedent's interest therein at the
time of such·transfer, or to the extent of such beneficiary's interest
under such contract of insurance, shall be subject to a like lien equal
to the amount of such tax.   Any part of such property sold by such
transferee or trustee to a bona fide purchaser for a fair consideration
in money or money's worth shall be divested of the lien and a like
lien shall then attach to all the property of such transferee or trustee,
except any part sold to a bona fide purchaser for a fair consideration
in money or money's worth.

the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated "—

(a) To the extent of his interein therein subject to the payment of charges against the estate, expenses of administration, and subject to distribution. (b) The dower or courtesy, etc., interest of the surviving spouse. (c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. (d) Any interest held jointly with another and. payable to the survivor. (e) Property passing under a general power of appointment. (f) The excess over $40,000 of insurance taken out by the decedent upon his own life.

*Edwards* v. *Slocum,* 264 U. S. 61, 62, says of. this tax: " This is not a tax upon a residue, it is a tax upon a transfer of his net estate by a decedent, a distinction marked by the words that we have quoted from the statute, and previously commented upon at length in *Knowlton* v. *Moore,* 178 U. S. 41, 49, 77. It comes into existence before and is independent of the receipt of the property by the legatee. It taxes, as Hanson, Death Duties, puts it in a passage cited in 178 U. S. 49, ' not the interest to which some person succeeds on a death, but the interest which ceased by reason of death.' " *Y. M. C. A.* v. *Davis,* 264 U. S. 47, 50: " What was being imposed here [Act February 24, 1919] was an excise upon the transfer of an estate upon death of the owner."

Concerning transfer of the residences in 1917, the trial court charged—

"I do not have much difficulty in reaching a conclusion respecting the deeds of the Boston and Brookline real estate, and I will first consider the claims of the parties respecting those transfers.

"The deeds conveyed, with warranty covenants, absolute and indefeasible title to the real estate without any valid reservations, conditions or restrictions whatsoever.

"The leases, executed the same day, were for one year or any renewal thereof but were always subject to the right in the lessors to terminate the term during any year by giving the notice as therein provided. It is conceded that the parties contemplated that the premises would be enjoyed by the decedent and her husband so long as they might desire to use them for residential purposes, but the decedent had no valid agreement to that effect. Her rights must be held to be governed by the term of the lease. If it could be said that the grantees did not come into full possession and enjoyment of the estate at the time of the conveyances—and I am inclined to the opinion that they did—their right to come into full possession did not depend in the slightest degree upon the death of the grantor. The effect of this transaction was to vest in the five sons named in the deed full and complete title to the property including the right of disposition. They had a right to sell the property subject to the lease and had all rights incident to ownership. There was here a gift completed during the lifetime of the donor. The act of 1918 did not purport to tax such gifts.

"I have reached the conclusion, therefore, that respecting the property conveyed by the deed, the facts of this case do not bring the property within the reach of the statute and that the Commissioner of Internal Revenue

was without authority to include the value of it as a part of the gross estate. I, therefore, give the following instructions, as requested by the plaintiffs: The real estate referred to in the second count of the declaration was not a part of the net estate of Julia Coolidge within the meaning of the Revenue Act of 1918."

We agree with this conclusion and accept as adequate the reasons advanced to support it.

Counsel for the United States argue that the challenged subsection only undertakes to tax the transfer from the dead and merely uses the gross estate to measure the charge. Taken together, §§ 402, 408 and 409 disclose definite purpose to do much more than tax this transfer.

Section 402 directs that the gross estate shall be ascertained by including (among other things) the value at his death of all property " to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth." The language of this section inhibits the conclusion that only subsequent transfers are to be included. Under *Lewellyn* v. *Frick,* 268 U. S. 238, 251, only such transfers come within § 402 (f). *Shwab* v. *Doyle,* 258 U. S. 529, 536, confined § 202 (b), Act September 8, 1916, c. 463, 39 Stat. 756, 777—prototypes of § 402 (c), Act 1919—to subsequent transfers. The emphatic words, " whether such transfer or trust is made or created before or after the passage of this Act," added by the latter Act, evidently were intended to exclude a like construction.

Section 408 authorizes an executor to recover from one who receives life insurance " such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies

bear to the net estate." Section 409 imposes a lien to secure the tax upon the gross estate; and provides: "If (a) the decedent makes a transfer of, or creates a trust with respect to, any property in contemplation of or intended to take effect in possession or enjoyment at or after his death (except in the case of a bona fide sale for a fair consideration in money or money's worth) or (b) if insurance passes under a contract executed by the decedent in favor of a specific beneficiary, and if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax, and such property, to the extent of the decedent's interest therein at the time of such transfer, or to the extent of such beneficiary's interest under such contract of insurance, shall be subject to a like lien equal to the amount of such tax."

For the United States it is said that the imposition under consideration is an exercise of the federal taxing power and is imposed upon a transmission of property by death. Also, that what Congress intended was to provide a measure for the tax which would operate equally upon all those who made testamentary dispositions of their property, whether this was by will or intestacy or only testamentary in effect; the immediate purpose was not to prevent evasions, for the statute applies to transactions completed when there was none to be evaded. And the conclusion is that the measure adopted is reasonable, since the specified transactions are testementary in effect.

But the conveyance by Mrs. Coolidge to trustees was in no proper sense testamentary, and it bears no substantial relationship to the transfer by death. The mere desire to equalize taxation cannot justify a burden on something not within congressional power. The language of the statute is not consistent with the idea that it utilizes the gross estate merely to measure a proper

charge upon the transfer by death. See *Lewellyn* v. *Frick, supra. Frick* v. *Pennsylvania,* 268 U. S. 473, 494, rejected a somewhat similar claim, and said—" Of course, this was but the equivalent of saying that it was admissible to measure the tax by a standard which took no account of the distinction between what the State had power to tax and what it had no power to tax, and which necessarily operated to make the amount of the tax just what it would have been had the State's power included what was excluded by the Constitution. This ground, in our opinion, is not tenable. It would open the way for easily doing indirectly what is forbidden to be done directly, and would render important constitutional limitations of no avail."

The exaction is not a succession tax like the one sustained by *Scholey* v. *Rew,* 23 Wall. 331. *Keeney* v. *New York,* 222 U. S. 525. The right to become beneficially entitled is not the occasion for it. There is no claim that the transfers were made in contemplation of death or with purpose to evade taxation. The provision applicable in such circumstances is not relied on and the extent of congressional power to prevent evasion or defeat of duly-imposed exactions need not be discussed.

Certainly, Congress may lay an excise upon the transfer of property by death reckoned upon the value of the interest which passes thereby. But under the mere guise of reaching something within its powers Congress may not lay a charge upon what is beyond them. Taxes are very real things and statutes imposing them are estimated by practical results.

As the executors paid the contested charge out of property which actually passed by death, only their rights are here involved. If the fund held by them had been insufficient and payment had been exacted from others, somewhat different questions might require consideration. *Lewellyn* v. *Frick, supra.*

The statute requires the executors to pay an excise ostensibly laid upon transfer of property by death from Mrs. Coolidge to them but reckoned upon its value plus the value of other property conveyed before the enactment in entire good faith and without contemplation of death. Is the statute, thus construed, within the power of Congress?

Undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation. This is necessary to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity.

Under the theory advanced for the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution. Real estate transferred years ago, when of small value, may be worth an enormous sum at the death. If the deceased leaves no estate there can be no tax; if, on the other hand, he leaves ten dollars both that and the real estate become liable. Different estates must bear disproportionate burdens determined by what the deceased did one or twenty years before he died. See *Frew* v. *Bowers,* 12 Fed. (2d) 625.

This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. *Brushaber* v. *Union Pacific R. R.,* 240 U. S. 1, 24; *Barclay & Co.* v. *Edwards,* 267 U. S. 442, 450. See also *Knowlton* v. *Moore,* 178 U. S. 41, 77. And we must conclude that § 402 (c)

of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation. Whether or how far the challenged provision is valid in respect of transfers made subsequent to the enactment, we need not now consider.

The judgment of the court below is

*Affirmed.*

MR. JUSTICE HOLMES, MR. JUSTICE BRANDEIS, MR. JUSTICE SANFORD, and MR. JUSTICE STONE concur in the result.