EDWARD H. ALSOP, EXECUTOR, ESTATE OF EDWARD B. ALSOP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6519.    Promulgated July 29, 1927.

Where a person in 1912, created a trust, the income of which was payable to him during his life and at his death the corpus vested in his sons, and where, in 1917, he created a second trust, the income of which, except a small part which was reserved to himself, was payable to a divorced wife, the corpus at the death of the wife to be paid to the grantor if alive, otherwise to his sons, and when the divorced wife survived the grantor, and when both trusts were revocable only with the consent of all beneficiaries; *Held*, that since both trusts were created prior to the enactment of the Revenue Act of 1921, the corpus of neither trust is subject to the estate tax imposed by that Act as part of the grantor's gross estate.

*R. M. T. McCready, Esq.*, for the petitioner.
*J. F. Greaney, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency of $37,590.87 in estate tax arising under the provisions of the Revenue Act of 1921. The question presented is whether the corpus of two trust estates created by Edward B. Alsop in the years 1912 and 1917, respectively, should be included in his gross estate. The facts are stipulated.

#### FINDINGS OF FACT.

Edward B. Alsop died testate on November 12, 1922, leaving no widow and as his sole descendent, his son, Edward H. Alsop. By a deed dated February 14, 1912, he conveyed certain tracts of land in Allegheny County, Pennsylvania, which he had acquired from his first wife, to himself and Reese L. Alsop, upon the following trusts:

To HAVE AND To HOLD the said premises, with all and singular the appurtenances thereunto belonging, In Trust Nevertheless, for the following uses and purposes:

To pay over and apply the rents, issues and profits therefrom to the use of myself, Edward B. Alsop, during my life. Upon my decease, the said Reese D.

Alsop shall continue to hold said properties or the profits derived therefrom under the terms of this Trust, and pay over the rents, issues, and profits arising therefrom, to or for the use and benefit of my two sons, Harold P. U. Alsop and Edward H. Alsop, share and share alike, until my youngest son shall have reached the age of thirty years. If, however, he shall have arrived at the age of thirty years prior to my decease, then upon my decease to pay over the principal, together with any accumulated interest derived therefrom, to my said sons, share and share alike. I declare it to be my intention and purpose of this Trust that my said sons shall receive share and share alike the principal and interest as herein provided, of said trust property and if either of my said sons shall die, then his share shall be divided equally among his children, if any, and if he shall have no children, then his share shall go to his wife. If he shall leave no wife or children surviving him, the said surviving son and his issue shall be entitled to the whole of said trust funds.

The Trustee under this Trust shall have the powers, by and with the consent of my two said sons, to annul or change the terms of this trust. Said trustee shall not be required to give any bond and shall have full power and authority to sell, convey, assign, transfer said real estate either at public or private sale and to make, execute and deliver deeds therefor; shall have power to mortgage said property or any part thereof; shall have power to invest and re-invest the proceeds or funds received from the sale of any of the property, in such manner and in such property or securities as the said trustees may deem proper, whether said investments be permitted to Trustees under the Laws of the State of Pennsylvania, or otherwise.

Edward H. Alsop and Harold P. U. Alsop were the children of the first wife. The consideration for the conveyance was the moral obligation which the grantor felt he was under to see to it that the sons of his first wife should ultimately acquire the property which he had received from their mother. Harold P. U. Alsop died on December 10, 1914, intestate, unmarried, and without issue. On December 17, 1914, Edward B. Alsop delivered to Edward H. Alsop the following paper:

Know all men by these presents

That for and in consideration of the sum of One Dollar to me paid and for other valuable considerations I hereby assign and set over to Harold P. U. Alsop and to Edward H. Alsop and their heirs any and all rents or profits of any kind whatsoever that may be derived from the property known as 347 Fifth Avenue, Pittsburgh, Pa., or from properties at Sewickley Heights, property in First Ward, Pittsburgh, property in Seventh Ward, Pittsburgh, property in 14th Ward Pittsburgh, Pa., property in 26th Ward, North Side, Pittsburgh, Pa., And any interest of any kind whatsoever I may have directly or indirectly in any and all of said properties. The above properties are set forth in detail in a certain Trust deed or agreement made by A. B. Alsop to E. B. Alsop and Reese D. Alsop Trustees.

Witness my hand and seal this sixth day of November, A. D., 1914.

Witnesses:                         E. B. ALSOP    [SEAL]

    HERMAN G. VEEDER

    DONALD MCRAE

Owing to the death of Harold P. U. Alsop, I this day hereby eliminate the name of said Harold P. U. Alsop from the above assignment, thus leaving

Edward H. Alsop as sole beneficiary under this assignment. Witness my hand and seal this 17th day of December, A. D. 1914.

Witness)    (DONALD McRAE                    E. B. ALSOP    [SEAL].
            (HERMAN G. VEEDER.

Edward B. Alsop continued after the date of the assignment to return for Federal income-tax purposes, the income from the trust properties. Edward H. Alsop arrived at the age of 30 years on January 21, 1922.

By a written instrument dated December 3, 1917, Edward B. Alsop transferred to the Union Trust Company of Pittsburgh, twenty-four Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. 4½ per cent, Consolidated Mortgage Gold Bonds, Series " J," due May 1, 1964, of the face value of $1,000 each, upon the following trusts:

First. To collect all of the interest upon said bonds that may become due during the term of the natural life of Effie Pope Hill Alsop, formerly wife of Edward B. Alsop, the Donor herein, and to pay over to the said Effie Pope Hill Alsop, free from all of her debts, contracts and engagements of every kind, and without right of anticipation, as said interest is paid, the sum of Five Hundred ($500) Dollars out of the semi-annual installment of interest thereafter paid to it, said The Union Trust Company of Pittsburgh, trustee as aforesaid, upon said bonds, during the term of the natural life of said Effie Pope Hill Alsop; such interest being payable in accordance with the terms of said bonds on May 1st, and November 1st, of each year the said payments to be made free from all tax saving and excepting such income tax as may be imposed by the United States Government and required to be collected at the source.

Second. To take for the own proper use of it said trustee, from the interest collected upon said bonds in excess of said semi-annual payments of Five Hundred ($500) Dollars each, during the existence of this trust, the sum of Thirty ($30) Dollars per annum as compensation in full for the services of it the said trustee under this Deed of Trust.

Third. To pay over the further excess of said interest, less any further required tax, annually to the said Edward B. Alsop during the joint lives of him and the said Effie Pope Hill Alsop, and if the said Edward B. Alsop shall die during the lifetime of said Effie Hill Alsop, then thereafter to Edward H. Alsop, son of Edward B. Alsop, now a resident of the city of Atlanta, State of Georgia, his heirs, executors, or administrators.

Fourth. In the event that said Effie Pope Hill Alsop shall be alive when said bonds mature and are paid, then to reinvest the whole of the proceeds of said bonds for the same uses and purposes, subject to the written approval of said Effie Pope Hill Alsop and of the person or persons then living who under this Deed would be the beneficiaries of the corpus of said trust were said Effie Pope Hill Alsop then to die, as to the manner and form of reinvestment, and with like approval to sell the securities held hereunder at any time and reinvest the proceeds.

Fifth. Upon the death of said Effie Pope Hill Alsop to transfer and deliver the whole of the corpus of this trust in such form as it may then be, together with any interest or other increment not otherwise applicable under the terms hereof, unto Edward B. Alsop, the donor herein, if he be then alive, and if he be not then alive, to his son, said Edward H. Alsop, or if he be not then alive,

then to such person or persons then living as would have been entitled to inherit and take the personal property of said Edward H. Alsop under the intestate laws of the State of Pennsylvania then in force had the said Edward H. Alsop died simultaneously with the said Effie Pope Hill Alsop; such persons should they be more than one, to take hereunder under the same conditions and in the same proportions that they would take under said intestate laws.

Sixth. The trust hereby created may be terminated at any time by written agreement filed with the trustee, duly executed by said Effie Pope Hill Alsop and by the person or persons then living who would be the beneficiary of the corpus of said trust under Paragraph Fifth hereof, were said Effie Pope Hill Alsop then to die. And in the event that this trust shall be so terminated by agreement, the corpus of the trust, and any and all increments thereof in the hands of the trustee, shall be disposed of by the trustee in accordance with the terms of the written agreement under which the trust is terminated.

Effie Pope Hill Alsop survived Edward B. Alsop. The Commissioner included in the gross estate, $6,995.88, that being the present value of the remainder interest in said bonds.

Of the deficiency, $27.04 is not in controversy.

The value of the trust estate created by the deed of February 14, 1912, and the value of the remainder interest under the trust conveyance of December 3, 1917, were included in the gross estate of the decedent on the sole ground that he had created trusts to take effect in possession or enjoyment at or after his death.

## OPINION.

MILLIKEN: This proceeding is governed by the decision in *Nichols* v. *Coolidge*, 274 U. S. 531. The facts in that case, which are material to this proceeding, are thus stated by the court:

Mrs. Julia Coolidge, of Massachusetts, survived her husband and died January 6, 1921. As required by the Revenue Act approved February 24, 1919, c. 18, 40 Stat. 1057, 1096, the executors returned a schedule to the Collector. He estimated the gross estate at $180,184.73 and allowed $77,747.74 deductions. They paid the amount assessed upon the balance. Their return did not include certain property transferred by the decedent through duly executed deeds and without valuable consideration, some to trustees and some directly to her children. The Commissioner of Internal Revenue held that under Section 402(c) the value of all this property at her death must be included in the gross estate. He raised the assessment accordingly and demanded the additional tax—$34,662.65—here challenged.

July 29, 1907, Mrs. Coolidge and her husband owned certain real estate in Boston, also valuable personal property, which they transferred without consideration to trustees, who agreed to hold it and pay the income to the settlors, then to the survivor, and after his death to distribute the corpus among the settlors' five children or their representatives. The deed directed that the interest of any child predeceasing the survivor should pass as provided by the statute of distribution "in effect at the time of the death of such survivor." The trustees were authorized to sell the property, to make and change investments, etc. April 6, 1917, the settlors assigned to the children their entire interest in the property, especially any right to the income therefrom. At the

death of Mrs. Coolidge the trustees held property worth $432,155.35, but through sales and changes much of what they originally received had passed from their possession.

The court said, with reference to this transfer: " But the conveyance by Mrs. Coolidge to the trustees was in no sense testamentary, and bears no circumstantial relationship to transfer by death." The court concluded their opinion as follows:

The statute requires the executors to pay an excise ostensibly laid upon transfer of property by death from Mrs. Coolidge to them but reckoned upon its value plus the value of other property conveyed before the enactment in entire good faith and without contemplation of death. Is the statute, thus construed, within the power of Congress?

Undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation. This is necessary to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity.

Under the theory advanced for the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution. Real estate transferred years ago, when of small value, may be worth an enormous sum at the death. If the deceased leaves no estate there can be no tax; if, on the other hand, he leaves ten dollars both that and the real estate become liable. Different estates must bear disproportionate burdens determined by what the deceased did one or twenty years before he died. See *Frew* v. *Bowers*, Collector, 12 Fed. (2d) 625.

This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. *Brushaber* v. *Union Pacific R. R.*, 240 U. S. 1, 24; *Barclay & Co.* v. *Edwards*, 267 U. S. 442, 450. See also *Knowlton* v. *Moore*, 178 U. S. 41, 77. And we must conclude that Section 402(c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation. Whether or how far the challenged provision is valid in respect of transfers made subsequent to the enactment, we need not now consider.

The transfer of February 14, 1912, was made before Congress had enacted any estate tax statute whatever and the transfer of December 3, 1917, was made before the enactment of the Revenue Act of 1921, under which the tax here involved was imposed, and neither transfer was under the rule laid down in the *Coolidge* case testamentary in character. Under this decision, judgment must go for petitioner. (Compare *Shukert* v. *Allen*, 273 U. S. 545.)

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*