A permanent injunction will be issued in accordance with this opinion.

**BRADY et al. v. HAM, Collector of Internal Revenue.**

**No. 164.**

District Court, D. Maine, S. D.

Feb. 27, 1930.

John E. Wilson and William Tudor Gardiner, both of Augusta, Me., for plaintiffs.

P. E. Miller, of Washington, D. C., and F. R. Dyer, U. S. Atty., and Wm. B. Nulty, Asst. U. S. Atty., both of Portland, Me., for defendant.

PETERS, District Judge.

The plaintiffs seek to recover the sum of $5,073.69 which they allege was wrongfully collected as taxes upon the estate of their testatrix who died on February 23, 1925. On May 16, 1911, she established a trust for the benefit of her two daughters. The value of the trust fund at the date of the decedent's death was $100,641.79, which amount was included as a part of the taxable gross estate of the decedent by the Commissioner of Internal Revenue.

The declaration of trust provides that the trustees should pay the net income to the two daughters during their lives, and on the death of either leaving issue, the income of the deceased daughter to be paid to such issue. On the death of either daughter leaving no issue the entire income to be paid to the surviving daughter, and on the death of both daughters the income to be paid to the issue of each daughter, or, if one daughter leaves no issue, the entire income to the issue of the other; and that twenty-one years after the death of the survivor of the two daughters and Manchester Haynes Wheeler, "the principal of the fund, whether Elizabeth S. Haynes be then living or not, shall be paid over to the persons and in the proportions, to whom and in which it would then have been distributed under the intestate laws of Maine then in force if it had then been personal property and the said Elizabeth S. Haynes had then owned it in her own right and had died intestate."

Paragraph four of the instrument contains the most important provision in connection with this case, and is as follows:

"4. Said Elizabeth S. Haynes shall have full power to make any additions to the trust property and to change and alter any or all of the trusts herein set forth, to name any beneficiaries other than those above named except herself, whether by way of addition or substitution and to appoint another trustee or other trustees at any time either by way of addition or substitution for the trustee or trustees at any time acting. Any such change, alteration or appointment shall be made by her deed and shall take effect immediately upon the delivery thereof to any one not herself who shall at the time be acting as a trustee hereunder, or if she be the sole trustee upon her execution thereof."

On June 12, 1918, acting under the power she reserved in paragraph four of the declaration of trust, the decedent altered its terms by providing that if, before the termination of the trust as previously established, there should be no living issue of the decedent (the settlor of the trust), then the trust should terminate and the property be distributed to other relatives and their issue.

The Commissioner of Internal Revenue in assessing the estate tax to be paid by the plaintiffs in their capacity as executors, included the corpus of this trust as a part of the value of the gross estate of the decedent, claiming to be authorized and required to do so by the Revenue Act of 1924, which provides as follows:

"Section 302. * * * The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for a fair consideration in money or money's worth; * * *

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein whether made, created, arising, existing, exercised or relinquished before or after the enactment of this Act." 26 USCA § 1094 note.

The pertinent treasury regulations involved are largely elaborations of the Statute, Article 19 being as follows: "Art. 19. *Power to Change Enjoyment.*—The value of property transferred, other than by a bona fide sale for a fair consideration in money or money's worth, constitutes a part of the gross estate if at the time of the decedent's death the enjoyment thereof was subject to any change through a power, exercisable either by the decedent alone or in conjunction with any person, to alter, amend or revoke."

The plaintiffs take the position that this is a transfer tax that is being imposed; that the trust in question was a transfer, not one "intended to take effect in possession or enjoyment at or after" the death of the decedent (section 302 (c) [26 USCA § 1094 note]), and not "subject at the date of his death to any change through the exercise of a power * * * to alter, amend, or revoke" (section 302(d); that it was made and completed long prior to the enactment of the statute imposing the tax, and to include the corpus of the trust in the gross taxable estate of the decedent is depriving the plaintiffs of their property without due process of law because of the retroactive features of the act.

The plaintiffs rely upon the case of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 713, 71 L. Ed. 1184, 52 A. L. R. 1081. That case, however, involved the application of the Revenue Act of February 24, 1919, to the particular facts there considered. It went no farther than to hold that a past, lawful, completed transaction, not testamentary in character, could not be used under section 402(c) of the Act of 1919 (40 Stat. 1097), to increase the gross estate of a testator for the purpose of measuring the taxes. The court says: "Under the theory advanced for the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution."

In Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 106, 72 L. Ed. 206, the court considered questions relating to the gift tax features of the Law of 1924, and, referring to Nichols v. Coolidge in this language, said:

"In Nichols v. Coolidge [274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081], this Court pointed out that a statute purporting to lay a tax may be so arbitrary and capricious that its enforcement would amount to deprivation of property without due process of law within the inhibition of the Fifth Amendment. As to the gifts which Blodgett made during January, 1924, we think the challenged enactment is arbitrary and for that reason invalid. It seems wholly unreasonable that one who, in entire good faith and without the slightest premonition of such consequence, made absolute disposition of his property by gifts should thereafter be required to pay a charge for so doing."

In Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 354, 72 L. Ed. 645, the court says, speaking of the Act of 1924: "And, further, that so far as applicable to bona fide gifts not made in anticipation of death and fully consummated prior to June 2, 1924, those provisions are arbitrary and invalid under the *due process* clause of the Fifth Amendment."

■ Retroactive features alone of the statute are not the basis of any legal objection to it. All recent income taxes for many years have been retroactive and, as pointed out by Mr. Justice Brandeis in his dissenting opinion in Untermyer v. Anderson, it has been settled for more than half a century that a law of Congress imposing a tax may be retroactive in its operation. It is the application of a retroactive statute in such a way as to cause an "arbitrary, whimsical and burdensome tax" in a particular case that is objectionable. Whenever the court has invalidated an application of the statute for this reason, the past transaction has been wholly complete and "beyond recall."

In the instant case an examination of the trust deed discloses a transaction not wholly complete and beyond recall. In fact, the decedent retained complete control over the trust and its subject matter in all respects save one, she could not substitute herself as a beneficiary. She could not only change the beneficiaries, their shares and interests, but she could change the time of the termination of the trust, postponing it until after her death, at which time the corpus could be distributed to designated beneficiaries.

Considering the powers over the trust which the decedent had and retained after the Revenue Act was passed and until her death, it cannot be said that the application of the statute would result in the assessment of tax of any such character as that condemned in Nichols v. Coolidge.

This case might be further distinguished from Nichols v. Coolidge by the fact that there the court was considering a transaction not testamentary in character, while here the transaction does certainly partake of a testamentary character.

The Supreme Court again considered the principle involved in Nichols v. Coolidge in the cases of Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565; Chase National Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 127, 73 L. Ed. 405; and Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410. Both parties rely upon these cases, the plaintiffs claiming that to constitute an exception to the principle laid down in Nichols v. Coolidge, it must appear that what amounts to a complete power of revocation must exist in the settlor of a trust, in order to postpone the transfer until the death of the settlor.

It is now settled that a complete power of revocation postpones the transfer and takes the case entirely out of the scope of Nichols v. Coolidge, but it does not follow that other cases of trusts, not having full power of revocation reserved, may not have powers reserved in the settlor such as would postpone the operation of a transfer until death. It was said in Chase National Bank v. U. S.: "Until the moment of death the decedent retained a legal interest in the policies which gave him the power of dispostion of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled."

And again: "Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax."

■ The power to control the shifting of the economic enjoyment of property is the legiti-

mate subject of a transfer tax. In this case the settlor had control over the possession and enjoyment of the property, not only such as a trustee would have but she could by the exercise of her reserve powers control the shifting of the economic benefit. Upon the nonexercise of that power at her death the title became complete in the beneficiaries named and a transfer occurred which is subject to the federal estate tax. The death of the settlor renders the transfer of the property complete and absolute which before was not complete.

Where there is such a specific provision of law such as is contained in section 302(d) of the Act (26 USCA § 1094 note) in question, exactly applying to the situation here, the tax must be upheld unless it clearly and unquestionably comes within the inhibition of Nichols v. Coolidge. "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt." Sinking Fund Cases, 99 U. S. 700, 718, 25 L. Ed. 496.

The result is that judgment must be for the defendant with costs, and it is so ordered.