J. Clarendon McClure, Administrator, Estate of Nathaniel D. McClure, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 30987.   Promulgated October 1, 1930.

*George E. H. Goodner, Esq.,* and *Walter K. Smith, C. P. A.,* for the petitioner.

*John D. Foley, Esq.,* and *J. A. Lyons, Esq.,* for the respondent.

1130

TRAMMELL: The petitioner contends that the transfers of the stock in the McClure Pine Co. made by the decedent to his children on or about November 1, 1923, and within two years prior to the decedent's death on October 29, 1924, were not made in contemplation of death. The respondent contends that they were made in contemplation of death.

Section 302 of the Revenue Act of 1924 provides in part as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*  \*  \*  \*  \*  \*  \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of Part I of this title;

\*  \*  \*  \*  \*  \*  \*

(h) Subdivisions  \*  \*  \*  (c)  \*  \*  \*  of this section shall apply to the transfers, trusts, estates, interests, rights, powers and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

There is no controversy between the parties as to the stock transferred constituting a material part of the decedent's property or as to the value of such stock at the time of its transfer.

The meaning of the phrase "in contemplation of death" as used in the statute has heretofore been discussed by us in a number of cases, and no useful purpose would be served by repeating such discussion here. See *Estate of George A. Wheelock*, 13 B. T. A. 828; *Isaac Gimbel et al., Executors*, 11 B. T. A. 214; *Joseph Edward Phillips, Executor*, 7 B. T. A. 1054; and *Philip T. Stark, Executor*, 3 B. T. A. 514.

Inasmuch as the transfers were made within two years prior to the decedent's death, there is a presumption under the statute that they were made in contemplation of death.

To sustain his contention, the petitioner, a son of the decedent, submitted the testimony of himself, E. O. McClure, another son of decedent, and Dr. McCrary.

We have set out in our findings of fact the business and recreational activities of the decedent during the last several years of his life as established by the testimony of E. O. McClure, a son of the decedent who was associated in business with him and who saw decedent about once a week and of the petitioner, also a son of the decedent, who lived in decedent's home at intervals between May, 1921, and the summer of 1924. The facts show that the decedent took an active interest in the business of the McClure Pine Co., of which he was president and stockholder, until about the time of his death. But to our minds such activity is not inconsistent with the idea that the decedent in making the transfers was doing so because of a belief that death was near at hand or was to be expected in the reasonably near future.

As to the decedent's physical condition during the last several years of his life, the petitioner submitted the testimony of himself, that of E. O. McClure, and that of Dr. McCrary.

The petitioner testified that he could not remember any apparent change in the decedent's condition from the early part of 1921 until the end of 1923. He also testified that he was living in New York at the time the transfers were made and did not see his father around that time. E. O. McClure testified that he could not detect any change in the decedent's health between the beginning and end of 1923 and that during 1923 and 1924 he could see no changes in the decedent's condition from any prior time. Upon being asked if he had seen the decedent several weeks prior to October 13, 1923, which is the nearest specific date to the time of the transfers that any question was asked as to the decedent's condition, he was unable to testify, stating that the decedent had gone to Nashville to visit his son Dr. C. C. McClure. While both the petitioner and his

brother testified that the decedent was not under the care of a doctor down to the end of 1923, they both testified that the decedent followed a diet very rigidly, and although they testified that so far as they knew decedent was never confined to his bed, yet during this time they knew that he had diabetes.

The return filed by the petitioner for the estate gives the names and addresses of the decedent's physicians as follows:

Dr. W. E. Kimbrough, St. Stephens, Ala.
Dr. G. C. Kilpatrick, Mobile, Ala.
Dr. G. C. McCrary, Jackson, Ala.
Dr. N. A. Oughterson, Nashville, Tenn.

Dr. Kilpatrick is shown as the physician who attended the decedent during his last illness. He also signed the certificate of the decedent's death, showing that the cause of his death was chronic myocarditis and that contributory or secondary to it was hypostatic pneumonia.

Although Dr. McCrary, the only one of the above named physicians whose testimony was offered, saw the decedent professionally during the three or four years prior to December, 1920, he never thereafter examined him or saw him in a professional capacity except for the one time when he was called in in consultation with Dr. Kimbrough on October 13, 1924, and about two weeks prior to the decedent's death. While Dr. McCrary met the decedent several times during 1921 and 1922, and at such times noticed no change in the decedent's condition, he never saw him during 1923. Dr. McCrary testified quite fully as to the decedent's diabetic condition prior to December, 1920, but was not in a position to testify as to his condition on or about the time the transfers were made in 1923.

While Dr. McCrary's testimony shows that he found the decedent's heart in good condition when he examined him for life insurance in 1916 or 1917 and about six or seven years prior to the transfers, it also shows that he never examined the decedent's heart again. The record shows that the decedent died from myocarditis which was chronic or of long standing. However, it is silent as to about how long the decedent had had the heart condition or as to when the condition began to manifest itself or as to the stage to which it had advanced when it first became manifest. Nor is there anything to indicate the rapidity with which the disease progressed after having manifested itself, or the treatment or regimen prescribed and followed for it. The record is silent as to whether the decedent knew that he had heart trouble, and if so as to when he was informed of it and whether he was informed as to the prospects of its resulting fatally in the near future. The answer to these and other pertinent questions is left entirely to speculation.

Considering all of the evidence, we are of the opinion that the petitioner has not sustained the burden of overcoming the statutory presumption that the transfers were made in contemplation of death within the meaning of the statute. See *W. J. Hale et al., Executors*, 18 B. T. A. 342.

The petitioner contends that the transfers may not be subjected to tax under the Revenue Act of 1924, as they were made prior to the passage of that act, and in support of the contention relies on the decision in *Nichols* v. *Coolidge*, 274 U. S. 531.

A similar contention with respect to the taxability of transfers made prior to the enactment of the Revenue Act of 1921 was before us in *John A. Loetscher et al., Executors*, 14 B. T. A. 228. There we said:

> It is urged that the gifts in question may not be subjected to tax under the Revenue Act of 1921, as they were made prior to the passage of that Act. The language of the Act expressly states that gifts made before the passage of the Act are subject to the tax and liability could only be escaped on the ground that such provision is unconstitutional. Petitioners urge that such was the decision in *Nichols* v. *Coolidge*, 274 U. S. 531; 6 Am. Fed. Tax Rep. 710. There the court was concerned with the attempt to tax a gift made many years before the enactment of the taxing statute, not in contemplation of death, but surrounded by such conditions that it took effect in possession at death. The court expressly refused to pass upon the situation where a gift was made in contemplation of death. The motion of the petitioners, made at the hearing, for judgment upon the pleadings upon the authority of that decision, is denied.

In view of the express provisions of subdivision (h) of section 302 of the Revenue Act of 1924 heretofore quoted, we think that what we said in the *Loetscher* case is applicable here and accordingly hold that the transfers are subject to tax under the Revenue Act of 1924. See *Helen Latham, Administratrix*, 16 B. T. A. 48, and *Seth M. Milliken et al., Executors*, v. *United States*, 69 Ct. Cls. 231.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*