## O'CONNOR v. DISTRICT OF COLUMBIA.

### No. 9098.

United States Court of Appeals
District of Columbia.

Argued Dec. 14, 1945.

Decided Jan. 28, 1946.

Mr. Michael M. Doyle, of Washington, D. C., with whom Mr. Harry J. Gerrity, of Washington, D. C., was on the brief, for petitioner.

Mr. G. C. Updegraff, Assistant Corporation Counsel, District of Columbia, of Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, District of Columbia, both of Washington, D. C., were on the brief, for respondent. Mr. Richmond B. Keech, formerly Corporation Counsel, of Washington, D. C., entered his appearance for respondent when the case was docketed.

Before GRONER, Chief Justice, EDGERTON and CLARK, Associate Justices.

CLARK, Associate Justice.

This is a petition for the review of a decision by the Board of Tax Appeals for the District of Columbia which sustained an inheritance tax assessment on certain stock acquired by the petitioner as a result of an agreement between him and two business associates.

The agreement in question was entered into in June, 1937, some two months before the enactment of the Inheritance Tax Law for the District of Columbia.[1] At the time of the signing of the contract the petitioner, O'Connor, was the majority stockholder in Southern Wholesalers, Inc. O'Connor held 60% of the outstanding stock, and his two associates, Ferber and Hyde, 35% and 5%, respectively. It was the desire of these stockholders that no outsiders be allowed to obtain stock, and further, that ownership control be kept in the O'Connor family, he being the only one with children. It was in pursuit of this

---

[1] D.C.Revenue Act of 1937, § 47—1601, D.C.Code 1940.

purpose that a written agreement was executed providing in part that Ferber and Hyde would surrender their stock to a trustee together with insurance policies on their lives in amounts comparable to the book value of their share holdings.[2] It was agreed that upon the death of Ferber or Hyde the insurance proceeds would go to the wives or estates of these two owners, and that such proceeds would constitute "payment" for the stock.[3] The stock thus "paid for" with the proceeds of the insurance was to be returned to the corporation by the trustee and re-issued to the surviving stockholders in direct ratio to their own holdings.

On this review we are concerned primarily with the relationship between O'Connor and Ferber which was created by this contract. Ferber died through accident in November, 1942, and the contract, as it affected his estate, was carried out; the trustee turned his stock over to the corporation for reissue and his wife received the *insurance* proceeds. The District Assessor claims that the stock, some 17,200 shares, obtained by O'Connor as a result of this transaction is subject to an inheritance tax under the District of Columbia law which provides:

"Taxes shall be imposed in relation to estates of decedents, the shares of beneficiaries of such estates, and gifts as hereinafter provided:

"(a) All * * * property, or interest therein, transferred by deed, grant, bargain, gift, or sale, (except in cases of a bona fide purchase for full consideration in 'money or money's worth), made or intended to take effect in possession or enjoyment after the death of the decedent, or made in contemplation of death, * * * in trust or otherwise (including property of which the decedent has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from such property * * *) * * * shall be subject to a tax as follows: * * *."[4]

Petitioner contends that when Ferber signed the agreement in 1937, and turned his stock and insurance over to the trustee, the transaction was complete and irrevocable so far as he, Ferber, was concerned. On this basis it is urged that Ferber was divested of title to his stock, under the terms of the agreement, prior to the enactment of the District Inheritance Tax Act and thus the transfer could not be retroactively affected by the Act. The District denies that there was a valid inter vivos transfer, either revocable or irrevocable, and adopts the opinion of the Board that the transfer, if any, was not for full consideration in money or money's worth as required by the law, if the exemption provision is to apply.

In our view there are two basic questions for consideration: (1) Were the terms of the contract such as constitute a valid inter vivos transfer, divesting Ferber of title to the stock he owned?; and (2) if not, is the petitioner exempt from taxation by reason of " * * * a bona fide purchase for full consideration in money or money's worth"?

In response to the first of these questions we hold that the contract was not effective to work a valid inter vivos transfer. We observe at least two contingencies which might have operated to preserve in whole or in part the stock ownership of Ferber. In the first place Ferber might have elected to withdraw from the corporation, in which case he was bound only to surrender that portion of his stock which was equal in value to the cash surrender proceeds of his insurance; the remainder of his holdings being subject to a purchase option in the hands of the other two stockholders. From this arrangement it can be seen that Ferber might, or might not, have been divested of the entire block of stock he held. More significant perhaps is the provision of the contract which gave O'Connor the power to set it aside at any time.[5] This power of revocation on the part of O'Connor was absolute. Had it been exercised at any time prior to Ferber's death it is clear that Ferber's owner-

---

[2] The value of the stock was to be determined in accordance with the last annual balance sheet previous to the death of Ferber or Hyde, as the case might be.

[3] Two of Ferber's insurance policies contained double indemnity provisions which increased their value, in case of

accidental death, to some $20,000 in excess of the face amount earmarked to cover his stock holdings.

[4] Note 1, supra.

[5] Section 11 of the contract provided: "It is covenanted and agreed that William E. O'Connor, who owns the controlling interest in said Southern Whole-

ship would have remained the same as if he had never entered into the agreement.

While admittedly this situation is not identical with that where the power of revocation rests exclusively in the hands of the settlor, we consider these contingencies quite adequate to take the case away from the precedent of Nichols v. Coolidge, 274 U. S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L. R. 1081, cited by the petitioner. In the Coolidge case it was found that the deeds in question operated as a valid inter vivos transfer, placing the property in the hands of the trustee, irrevocably and beyond recall. As petitioner has recognized in his brief, the holding in that case was premised on a conclusion that "the conveyance by Mrs. Coolidge to trustees was in no proper sense testamentary, and it bears no substantial relationship to the transfer by death." 274 U.S. 531, 540, 47 S.Ct. 710, 713, 71 L. Ed. 1184, 52 A.L.R. 1081. Such is not the situation in the instant case, where it appears from the terms of the contract creating the trust arrangement that only at the time of Ferber's death would it become certain that someone else was to receive his stock. Clearly, the contract for transfer was made in contemplation of death. Ferber was at best only potentially divested of title during his lifetime.

■ Holding as we do, that the transfer was testamentary by character, we come to the question of whether or not O'Connor is entitled to tax exemption on the ground of having paid full consideration in money or money's worth. We have carefully examined the terms of the contract, and reviewed them in the light of the facts of this transaction as evidenced by the testimony taken before the Board. From this review we conclude that the petitioner did not give any consideration whatever for the benefits he received under the contract. Neither of the other parties stood to acquire any of O'Connor's holdings; both Ferber and Hyde paid their own insurance premiums; and O'Connor held an absolute power to declare the contract at an end at any time. The only logical conclusion permitted by the facts appearing in the record is that O'Connor had a perfectly sheltered position which had cost him nothing. It does seem that this was perhaps an unusual business bargain. Ferber and Hyde paid the cost of their own insurance and each was willing to say that the proceeds should be "payment" for his stock in the event of death, while O'Connor, the majority stockholder, occupied an "all benefits, no burdens" position.[6]

In argument before the court, counsel for the petitioner went to some length in explaining that both Ferber and Hyde were required to lodge their stock and insurance with the trustee, and that each stood to acquire a share of the other's holdings in the event of death. This fact, the petitioner urges, goes to a showing of consideration. The frailty of this argument is apparent on its face; the consideration moving between Ferber and Hyde did nothing to enhance the contractual status of O'Connor, and it is his position that we have before us. The record is devoid of any showing of consideration moving from O'Connor to Ferber, much less any evidence that such consideration was "money or money's worth."[7]

■ In the light of the foregoing, we find no need to deal at length with the constitutional arguments raised by the petitioner. This court has held in Neild et al. v. District of Columbia, 71 App.D.C. 306, 316, 110 F.2d 246, 256, that: "The Fourteenth Amendment is not applicable in the District of Columbia. To the extent that the privilege of 'equal protection of the laws' exists in the District of Columbia it depends upon the due process clause of the Fifth Amendment and other provisions of the Constitution which are applicable to the federal government."

Since we conclude that the 1937 agreement was not effective to transfer title to the stock in question, and that the transfer was in fact testamentary by nature, this is not a case where there is an attempt to retroactively levy a tax,[8] in such fashion

---

salers, Inc., shall have the right, at any time he desires, to cancel and annul this Agreement. In the event that the said O'Connor shall cancel or annul this Agreement, then the Trustee shall immediately return the stock held by him to the respective owners thereof."

[6] Cf. Hahn v. Commissioner, 38 B.T.A. 3, where the corporation took out the insurance and the statute involved imposed a tax on insurance carried by the decedent upon his own life.

[7] See Sheets et al. v. Commissioner of Internal Revenue, 8 Cir., 95 F.2d 727.

[8] It is noted on this point that a retroactive application is not necessarily fatal. Welch v. Henry, 305 U.S. 134, 146, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142; Milliken v. United States, 283 U.S. 15, 21, 51 S.Ct. 324, 75 L.Ed. 809, and cases cited.

as to bring the statute under the interdiction of the Fifth Amendment.

Affirmed.