THOMAS A. BEACH *et al.*

*v.*

THE FIRST METHODIST EPISCOPAL CHURCH.

*Filed at Ottawa September 25, 1880.*

1. SUBSCRIPTION—*not binding until accepted.* Where a person signs a subscription paper, for the payment of a given sum upon the condition a certain sum shall be subscribed for the erection of a church building, it is a mere offer to pay upon the condition expressed, and subject to be withdrawn at any time before the church takes any action upon the faith of it, by paying money or incurring liability in respect to the object for which the subscription was made.

2. A promise to pay a sum of money for the erection of a church stands as a mere offer, and may be revoked at any time before it is acted upon. It is the expending of money and incurring of liability on the faith of the promise that gives a right of action. Until acted upon there is no mutuality, and being only an offer, susceptible of revocation, it follows that the death of the promisor, or his insanity, before the offer is acted upon, will work a revocation of the offer.

APPEAL from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. L. E. PAYSON, Mr. S. S. LAWRENCE, and Mr. D. L. MURDOCK, for the appellants:

The declaration averring that Beach was adjudged insane April 20, 1875, his conservators appointed in July, and no steps being taken towards the work, or to incur any liability until September, 1876, there is no liability shown on the subscription. *Pratt, etc.* v. *Baptist Society of Elgin,* 93 Ill. 475. Nor does a verdict cure this defect. *McLean County Coal Co.* v. *Long,* 91 Ill. 617.

A subscription, until acted on or withdrawn, is in the nature of an offer constantly repeated, which requires some one capable of making a repetition of the offer. This can

not be done by an insane person any more than by one dead. The adjudication of insanity was, by the law, a revocation of the offer before it ever became a binding contract.

Mr. H. H. McDOWELL, and Mr. C. C. STRAWN, for the appellee.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

The record shows that Lorenzo Beach had presented to him a subscription paper in the following words:

"*Fairbury, February* 14, 1874.

"We, the undersigned, agree to pay the sum set opposite our respective names, for the purpose of erecting a new M. E. church in this place, said sums to be paid as follows: One-third to be paid when contract is let, one-third when building is enclosed, one-third when building is completed. Probable cost of said church from ten thousand dollars ($10,000) to twelve thousand dollars ($12,000)."

To which he attached and subscribed the following:

"*Fairbury,* 1874.

"Dr. Beach gives this subscription on the condition that the remainder of eight thousand dollars is subscribed.

"Lorenzo Beach,    -    -    -    -    -    $2000."

On the 20th of April, 1875, Lorenzo Beach was adjudged by the county court of Livingston county, insane, and Thomas A. Beach and C. C. Bartlett were appointed conservators of his person and property, and they continued to act as such until the death of Dr. Beach, which occurred in August, 1878.

Other subscriptions to the amount of $8000 toward the building of this church were obtained. The construction of the church was begun about September of 1876; and, while there is some dispute on the question of whether the church was ever fully finished, for the purposes of this opinion we

will assume that the building was finished before June, 1877. About June, 1877, the church was badly damaged by a hurricane. In September, 1877, when the trustees and members of the congregation were consulting as to the propriety of immediately repairing the same, one of the conservators of the person and property of Dr. Beach, being at the meeting, it is said, pledged the society the prompt and full payment of the unpaid residue of the subscription. This unpaid residue was about $666;—the conservators having paid the first two installments of the subscription after the building of the church was begun.

This action was brought shortly before the death of Dr. Beach for the last installment of the subscription, $666. After his death his heirs were made parties, under a stipulation, and defended the action.

In the circuit court, judgment was rendered for the unpaid one-third of the subscription, and costs. On appeal to the Appellate Court, that judgment was affirmed. The defendants appeal to this court.

The subscription made by Dr. Beach was, in its nature, a mere offer to pay that amount of money to the church upon the condition therein expressed.

There is nothing in the record tending to show that the church, in this case, took any action, upon the faith of this subscription, until after Dr. Beach was adjudged insane, or that the church paid money, or incurred any liability. His insanity, by operation of law, was a revocation of the offer. In *Pratt, Administratrix, etc.* v. *The Trustees of the Baptist Society of Elgin,* 93 Ill. 475, this court said, in relation to such a subscription: "The promise, in such case, stands as a mere offer, and may, by necessary implication, be revoked at any time before it is acted upon. It is the expending of money, etc., or incurring of legal liability on the faith of a promise, which gives the right of action, and without which there is no right of action. Until acted upon, there is no mutuality, and, being only an offer, and susceptible of revocation at

any time before being acted upon, it follows that the death of the promisor, before the offer is acted upon, is a revocation of the offer. * * * The continuance of an offer is in the nature of its constant repetition, which, of course, necessarily requires some one capable of making a repetition. Obviously, this can no more be done by a dead man than a contract can, in the first instance, be made by a dead man."

The ground upon which the court rested its judgment in the *Pratt case,* was the want of capacity on the part of the promisor to continue his promise or offer. The insanity of Dr. Beach rendered him, in law, as incapable of making a contract, or of continuing or repeating an offer to the church, as if he had been actually dead.

Conservators of the person and property of an insane man may perform personal contracts of their ward legally subsisting, under some circumstances; but in this case there was no contract between Dr. Beach and the church. The paper signed by Dr. Beach was of such a nature that no binding contract sprung therefrom until the church had accepted the same by incurring some legal liability, or expending money upon the faith of it. There being no binding contract upon Dr. Beach at the time that his conservators made the payments, they had no lawful authority to make the same, and the estate of Dr. Beach was not bound thereby.

The judgment of the Appellate Court in this case must be reversed and the cause remanded.

*Judgment reversed.*