(No. 12920.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, vs.
CATHARINE A. SHAFFER, Exrx. et al. Appellants.

*Opinion filed December 17, 1919—Rehearing denied Feb. 5, 1920.*

1. INHERITANCE TAX—*when transfers are within the Inheritance
Tax act.* Transfers of property which were intended by the par-
ties not to take effect in possession or enjoyment until at or after
the death of the grantor are subject to an inheritance tax, even
though such intention is not manifested in writing but is established
by parol evidence of the acts and conduct of the parties.

2. SAME—*when transfer of life estates is taxable.* Where a
man conveys a farm to his wife and a year later joins with her
in a conveyance of a life estate in the farm to their daughters, the
transfer of the life estates is taxable at the death of the father
some years later if the evidence warrants the conclusion that the
deeds were, in fact, but one transaction and were not intended to
take effect until the father's death.

APPEAL from the County Court of Macon county; the
Hon. JOHN H. McCOY, Judge, presiding.

JACK & BOGGESS, for appellants.

EDWARD J. BRUNDAGE, Attorney General, FLOYD E.
BRITTON, and JOHN W. EVANS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from the county court of Macon county
from a judgment rendered in that court imposing a transfer
or inheritance tax on certain property formerly owned by
Francis M. Shaffer, now deceased. The appraiser fixed the
transfer tax at certain amounts, and on appeal to the county
court these amounts were modified, and the court fixed the
tax on the property received by the widow at $902.55 and
on the property received by the daughters at $696.27 each.
From that judgment this appeal was taken by the widow
and daughters.

Francis M. Shaffer died testate, eighty-one years of age, December 14, 1918. He left as his only heirs-at-law, Catharine A. Shaffer, his widow, and his twin daughters, Sallie Shaffer and Mrs. Laura S. Morrison. The property here in question upon which this transfer tax was levied was not mentioned in his will, the only property attempted to be bequeathed thereby being about $100,000 in personalty, largely government bonds, which he left, share and share alike, to his widow and two daughters. Practically the only question involved in this hearing is whether certain transfers of real estate made by him to his wife and daughters were intended to take effect in possession or enjoyment at or before his death. During his lifetime he had acquired by purchase at different times considerable farm property. He bought one tract of 320 acres in Piatt county, the date of this purchase not being shown in the record, but it is conceded that the purchase price was paid with his own funds. By other purchases with his own funds, commencing in 1879 and on succeeding dates, he acquired at different times 490 acres of farm land in Macon county, which was at the time of the purchases conveyed by the respective owners to his wife, Mrs. Shaffer. In 1893 she conveyed the Macon county farm of 490 acres to her husband, said Francis M. Shaffer. In 1910 he re-conveyed the same farm back to his wife. In 1911 he conveyed a life interest in the Piatt county farm to his wife, and on the same day the husband and wife joined in a deed to their twin daughters conveying a life estate in the Macon county farm to them. The appraiser and county court held that these life estates so conveyed to the widow and two daughters were subject to the transfer tax.

The only testimony taken on the hearing as to the controversial issues was that of the widow and two daughters. The wife testified that she remembered the making of the deed conveying to her a life estate in the Piatt county farm. She remembered her husband handing her the deed and

saying to her, "This is the deed to the Piatt county farm and this is yours;" that nothing was said about recording it, and that she took it and it remained in her possession for quite a time in the portfolio which she testified was used by the family for keeping papers; that this portfolio was marked "F. M. Shaffer;" that the deed remained in this portfolio until 1917, when it was recorded; that during all these years her husband looked after the leasing of the farm, collected the rents, paid the taxes and had the entire management and control without any accounting to her, although she testified that he talked with her frequently about such leasing and collection of rents. She testified further that she left all matters to him and depended upon him entirely; that she had the portfolio in her possession for a time and her husband had it in his possession for a time and then it was taken to the bank in Decatur and left there in her husband's name, where it remained until after his death.

The testimony of the two daughters was practically to the same effect as their mother's as to the control and management of the Piatt county farm. It appears from the evidence that Shaffer kept the same control over the Macon county farm during all the years when it stood in his wife's name and after the life interest had been conveyed to the daughters as he had over the Piatt county farm. The daughter Sallie testified to the deed of the Piatt county farm being delivered to her mother and that it remained in her mother's possession for several weeks and was then put in the portfolio; that the father delivered the deed to the Macon county farm to herself and her sister, asking each of them to keep it for a time; that she and her sister so kept it as suggested by the father but left their father in entire charge and management of the farm; that neither she nor her sister ever had an accounting with their father as to the proceeds of the Macon county farm; that he leased the farm, collected the rents and had entire charge of it as

long as he lived, the same as if it were his own; that while they never had an accounting, their father gave them money at any time they needed or asked for it; that the funds of all the family were kept by him in his name in the bank. The daughters testified that their father was present when the deed to the Macon county farm was taken from the portfolio, in 1917, and given to an attorney, Miss Bivans, to be recorded; they did not remember who actually gave the deed to her, but that one of the sisters got it back from the recorder's office and it was returned to the portfolio.

Each of the appellants testified they had never had any particular experience in business matters or in the management of the farm property, and that while they considered the husband and father their agent in managing the property, they left these matters entirely to him, to be carried on according to his own judgment. At the father's death the income from these farms and the unsold crops were inventoried by the wife and daughters, executrices in the will, as assets of his estate. The evidence shows he was sick only a few days before his death, and that he was in excellent health at the time he executed these deeds and remained in that condition until nearly the time of his death.

Paragraph 3 of section 1 of the Inheritance Tax act provides, among other things, that when the transfer of property is made "in contemplation of the death of the grantor * * * or intended to take effect in possession or enjoyment at or after such death," then it shall be subject to the transfer tax. We have had occasion to discuss the meaning "in contemplation of the death," as used in this statute, in *Rosenthal* v. *People*, 211 Ill. 306, and also in *In re Estate of Benton*, 234 id. 366. This last case is also published in 14 Ann. Cas. 107, with an extended note, in which it is stated that that phrase does not refer to that general expectation which every mortal entertains of death, but rather to the apprehension which arises from some existing condition of body or some impending peril,—that is, that the

291—10

thought of death has taken so firm a hold on the donor's mind as to control and dictate his actions regarding his property, and the businesss is transacted while contemplating death and considering what conditions would arise or exist in the event of death without making the transfer. Were these deeds made and executed with the understanding that they were not to take effect until after the death of the father?

The argument of counsel for appellants is to the effect that in the management, care and control of these farms Shaffer was acting as the agent of his wife and daughters and that their evidence tends strongly to support this conclusion; that he made these transfers while in vigorous health, seven years before his death, and did not then dispose of his entire estate by these deeds or otherwise; that at his death he was still wealthy, owning over $100,000 in personal property and the remainder in the Macon county farm; that if he had been making these deeds for the purpose of avoiding the inheritance tax he would have certainly carried on the matter in a different way; that all his acts are entirely consistent with his desire to provide for his wife and children properly, and that the fact that the wife and daughters permitted him to remain in control and management of the farms was only in accordance with the well known custom and habit of proper family management in American homes,—that is, that the man is to have charge of the outside business and the woman to have charge of the house affairs,—and that the testimony of the wife and daughters is in strict accord with this custom and with the statement of one of the daughters that because of the father's business experience and their lack of it "he naturally took care of everything for us on the farms and we didn't question his right to do it."

It is argued, on the other hand, by counsel for the State, that Shaffer kept possession of the unrecorded deeds for many years after they had been made and delivered; that

the action not only of the grantor but of the grantees with reference to these deeds and the care and management of the farms, and the action of the grantees in treating and considering the grain remaining on the farms at the time of the grantor's death as property belonging to the grantor, are consistent only with the theory that it was the intention of all the parties to the transfers that the grantor should retain possession and enjoyment of the land during his lifetime. They further argue that the evidence discloses that during all these years, from the time of the original purchase of the farms until his death, Shaffer never made an accounting to his wife or daughters for the rents or profits; that he maintained the family home and supplied all the wants and necessities of the family as a matter of duty and affection, but that during all these years there was no intimation by any of these parties that there was any liability or responsibility on his part to render anyone an accounting for the profits of the farms; that no part of the family expenses of the wife or daughters was ever charged up against the income derived from the farms; that Shaffer apparently kept but one account and that in his own individual name; that all the income from both these farms went into that account; that the net income and profits were invested in his name as his own individual property; that his wife and daughters by their acts during his life, and after his death in filing the inventory and in caring for the estate, showed by their conduct that they were disclaiming any right to the ownership or enjoyment of the lands during his lifetime and waived any right to claim the income from the rents and profits all the years prior to his death after these deeds were executed, and that their conduct should now estop them from asserting that their intention was otherwise.

There can be no question, under the authorities, that if the actual intention of the parties to the deeds was that the possession and enjoyment of the lands so conveyed thereby

were to be postponed until the grantor's death the transfer of such lands is subject to the inheritance tax notwithstanding such evidence is not in writing but can only be shown by parol. (*People* v. *Estate of Moir,* 207 Ill. 180; *People* v. *Burkhalter,* 247 id. 600; *People* v. *Porter,* 287 id. 401.) It was held in *People* v. *Estate of Moir, supra,* that if the actual possession and enjoyment are retained by the grantor until his death and the grantee exercises no right of ownership or does not take possession or come into the enjoyment of the land when the deeds are executed, their conduct should estop them from asserting that their intention was otherwise. That case further held that though there was no express agreement, written or verbal, to postpone the possession or enjoyment until after the death of the grantor, the intention to so postpone such possession and enjoyment may be inferred from the acts and conduct of the parties. While the question on this record is not entirely free from doubt, we think from a consideration of all the evidence, in the light of the authorities on this subject, that the acts of all the parties, both before and after the grantor's death, are more consistent with the theory that they intended that he should retain possession and control of the property until his death. The county court so held, and we agree with the court's conclusion in that regard.

The county court held that the deed from the husband to the wife, of the Macon county farm, and the deed from the wife and husband to the two daughters, were each really a part of the same transaction, and therefore the life interests to the daughters should be taxable as a transfer from the father to his daughters. In this regard we think the county court held rightly. This being true, the argument of counsel for the State cannot be upheld on the cross-errors that the entire fee of the Macon county farm should be taxed, under the Inheritance Tax act, on the deed from the husband to the wife before the life interest

was transferred by the husband and wife to the daughters. The two transactions resulting in said two deeds are practically so connected as to amount to one and the same act.

The judgment of the county court will be affirmed.

*Judgment affirmed.*