Considered by STERNHAGEN and GREEN.

---

JOSEPH EDWARD PHILLIPS, EXECUTOR OF THE LAST WILL AND TESTAMENT OF JOHN D. PHILLIPS, DECEASED; MARY VIRGIL JOHNSTON, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF JOSEPH W. PHILLIPS, DECEASED; GEORGE E. PHILLIPS; AND KATHERINE P. KEENAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6352. Promulgated August 9, 1927.

The transfer of real estate, under circumstances disclosed by the evidence, two years, ten months and eight days prior to the donor's death, *held* not to have been made in contemplation of death.

*Jesse Black, Jr., Esq.*, for the petitioners.
*Henry Ravenel, Esq.*, for the respondent.

A return was made for the estate of Joseph N. Phillips, who died July 8, 1922, and the tax of $350.06 shown thereon was paid. The Commissioner has determined a deficiency in estate tax on the transfer of the net estate of Joseph N. Phillips of $2,076.56. The issue is whether or not deeds made by Joseph N. Phillips, August 30, 1919, conveying certain real estate to his children, were made in contem-

plation of death. The Commissioner contends that the transfer of the real estate is taxable, within the meaning of section 402 (c) of the Revenue Act of 1921. Petitioners insist such transfers were not made in contemplation of death, and no estate tax is due thereon.

### FINDINGS OF FACT.

Joseph Edward Phillips, executor of the last will and testament of his father, John D. Phillips, deceased, and George E. Phillips are both residents of Tazewell County, Illinois. Mary Virgil Johnston, executrix of the last will and testament of Joseph W. Phillips, deceased, formerly her husband, is a resident of Peoria County, Illinois.

Joseph N. Phillips died intestate on July 8, 1922, a resident of Tazewell County, Illinois, at which time he was a few months over eighty years of age. His wife, Emma Phillips, predeceased him, dying intestate, a resident of the same county on July 26, 1919. She owed no debts and no administration was had on her estate. She left surviving her, as her sole heirs at law, her husband, Joseph N. Phillips, and her children, John D., George E., and Joseph W. Phillips, and Katherine P. Keenan, all adults.

Mrs. Phillips, at the time of her death, owned a farm of several hundred acres in Tazewell County, Illinois, which was occupied by her son, George E. Phillips, as tenant. At the time of her death and of the death of Joseph N. Phillips, the latter was the owner of about 775 acres of land in Tazewell County, Illinois. This land, with the exception of a small part of the homestead tract which was then farmed by Joseph N. Phillips on his own account, was occupied by their sons John D. Phillips and Joseph W. Phillips, as tenants. The only heirs at law of Joseph N. Phillips at the time of his death were his children, the before-mentioned children of his wife, Emma Phillips.

Some years prior to the death of Emma Phillips, her husband, Joseph N. Phillips, had often expressed his intention to his children of giving his land to them. He and his wife agreed that their farms should be given to their children. Neither intended to make any will.

A short time after the death of Mrs. Phillips, Joseph N. Phillips had a conference with his children and again expressed his intention of deeding his land to them, including his interest in the land that belonged to his deceased wife. The matter was discussed with the understanding that he would retain an annuity of $4,000 for his life, to be paid to him by his children, if decedent should become in need of same, and he desired them to divide the land among themselves as he suggested and as they wished.

On August 30, 1919, at the Green Valley Bank, in the village of Green Valley, Ill., Joseph N. Phillips executed, acknowledged and delivered to his children a warranty deed, conveying all of his own land and also executed, acknowledged and delivered a quitclaim deed to them, conveying all his interest in the land of his deceased wife, retaining a lien in the warranty deed for the annuity or annual payment of $4,000 to him, during his life. On that date, Joseph N. Phillips was seventy-seven years of age.

Afterwards by deeds dated August 30, 1919, and acknowledged January 1, 1920, to carry out the desires of his children, himself and his wife, the children exchanged deeds between themselves, making such conveyances to each other as would give each child the entire fee title to the land their father and mother desired them to have and which was acceptable to each. These conveyances included the transfer of the farm owned by their mother.

Since such conveyances, each of said children or their legal representatives have been in absolute possession, ownership and control of the property to which they so acquired title.

Joseph N. Phillips was a successful business man, and for many years was the president, a stockholder, and a director of the Green Valley Bank, and continued as such until the time of his death. The decedent was active in business affairs until the date of his death. It was decedent's custom to drive unaccompanied by anyone from his home, a distance of three miles, to the village of Green Valley. He frequently drove several miles to visit with his children. Prior to the date of the conveyances mentioned, the decedent actively superintended the operation of his farms, and personally operated a portion of the farm. For several years prior to his death he received occasional medical attention from his family physician for minor and inconsequential ailments of such a temporary character as not to cause him to feel any concern about his health. At the time of making and delivering the deeds of conveyance to his children, he was in his usual good health, mentally competent to transact business, and there was nothing in his conduct or conversation indicating that he was making the transfers for any reason other than to carry out a long expressed intention to divide his property among his children. He had often commented upon the fact that an old friend of his, Edward Bailey, had divided his property among his children during his lifetime, that this was the proper thing to do, and that he intended to do likewise. At the time of the execution and delivery of the deeds to his children on August 30, 1919, Joseph N. Phillips did not contemplate death within the reasonably near future and the condition of his health gave him no cause to do so.

Before and after his wife's death, Joseph N. Phillips was competent to, and did, transact business, and up to within a few months

of his death he was active physically for one of his age. He was in a bedfast condition prior to his death for only a few weeks. Previous to that time he was going around the houses and barns on his farm as usual, having relieved himself of actual management of farm matters. Hypostatic pneumonia was the immediate cause of the decedent's death.

The State of Illinois attempted to levy a succession or inheritance tax on the transfer of the estate of Joseph N. Phillips, the contention of the State being that the deeds conveying the lands here in question to his children were made in contemplation of death. On January 7, 1927, the County Court of Tazewell County, Illinois, rendered a final decree from which no appeal was taken, in which decree the court upon substantially the same evidence as has been submitted in this proceeding made a finding that said deeds were not made in contemplation of death, and that there was no inheritance tax due the State of Illinois from said estate.

### OPINION.

LITTLETON: The question presented is whether the conveyances made by the decedent to his children on August 30, 1919, were made in contemplation of death, within the meaning of section 402 (c) of the Revenue Act of 1921, which provides that the value of the gross estate shall be determined by including the value at the time of the death of all property of the decedent to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of death, except in the case of a bona fide sale for a fair consideration in money or money's worth.

No general rule can be formulated which will fit all cases, but each case must be examined and determined on its own facts and circumstances in the light of the experience which the courts have gained in dealing with such matters. For this purpose the donor's age, physical condition, and any action contemplated to be taken by him with respect to his health, as well as the length of time he survives the making of the transfers, are all proper matters to be considered in determining whether or not the act was done in contemplation of death. (*People* v. *Danks,* 289 Ill. 535; 124 N. E. 627.)

The evidence shows that the decedent was vigorous and active for one of his age; that he had no ailments prior to making the conveyances to his children, nor afterwards, until within a few months of his death, that interfered with his usual and customary activities.

Prior to making the conveyances and afterwards, up to his last illness, his mind was clear and he was competent to transact and did transact business. The doctor, the only one who—so far as the evidence shows—ever prescribed or treated him for any ailment, testified that at the date the deeds were executed there was nothing

in the decedent's physical condition that would lead him to believe he was in danger of a sudden or early death, and that he considered the decedent a vigorous man for his age. The doctor further testified he did not see decedent for possibly ten days prior to his death and gives it as his opinion that death was due to hypostatic pneumonia, saying: "Because two or three months prior to his death I observed an organic heart lesion, the circulation became poor and that is what we would expect, and that is what usually happens as a terminate and immediate cause of death." The doctor, however, explains that in making out a certificate of death as a matter of form, he gave as the cause of death "senile cerebral atrophy," knowing that the decedent had had that for some years and he wished to state something that the state board of health would accept as a cause of death. He then further states that "The cerebral senile atrophy is a slow progressive affair and is not alarming as to any man's death, and the fact that the man would develop a heart lesion and then had the other would not contribute to the possibility of an early death particularly." The physician further testified that if a man lives temperately as the decedent did and his general condition of health otherwise is good, as was true in this case, heart lesion is not likely to result fatally; that the habits of life of decedent were just what a physician would want and expect so as not to be alarmed about heart lesion, and that he never at any time said anything to the decedent about any heart lesion and the decedent "never seemed to think he was sick at any time."

It may be well that when the conveyances in question were made Joseph N. Phillips contemplated death at some time in the future, but men perform acts daily with the knowledge that death may overtake them any moment. Men all wish to accomplish certain things before that fateful day and in that sense things may be done in contemplation of death, but this general and certain knowledge that to all death cometh soon or late is not what is meant by the phrase " in contemplation of death " as used in the Revenue Act.

In *Meyer* v. *United States*, 60 Ct. Cls. 474, it is said:

A review of the authorities is scarcely necessary to sustain the proposition that the contemplation of death referred to in the statute is not that contemplation of death which must be present with all of us, mindful of its certainty at some time, we know not when, but it is that state of mind which by reason of advanced age, serious illness, or other producing cause induces the conviction that death in the near future is to be anticipated. If it be said that there need not be a conviction that death is imminent, there must at least be a belief that it is to be expected in the very near future rather than in the usual course of events; and in this state of mind, in this belief in the near approach of death, must be found the motive for the conveyance if it is properly to be characterized as made in contemplation of death.

In the case of *Rea* v. *Heiner*, 6 Fed. (2d) 389, the District Court of the Western District of Pennsylvania stated:

There is a common agreement that the words "contemplation of death" mean not the general knowledge of all men that they must die; that it must be a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand; and that, so arising, it must be the direct and animating cause, and the only cause, of the transfer. If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown.

As stated in *Rosenthal* v. *People*, 211 Ill. 306; 71 N. E. 1121:

A gift is made in contemplation of death when it is made in expectation of that event, or with that event in view.

To the same effect are *People* v. *Burkhalter*, 247 Ill. 600; 93 N. E. 379; *People* v. *Carpenter*, 264 Ill. 400; 106 N. E. 302; *People* v. *Porter*, 287 Ill. 401; 123 N. E. 59; *People* v. *Shaffer*, 291 Ill. 142; 125 N. E. 887.

By the term "in contemplation of death" is not meant on the one hand the general expectancy of death which is entertained by all persons for every person knows that he must die. * * * But a transfer may be said to be made "in contemplation of death" if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer. (*Shwab* v. *Doyle*, 269 Fed. 328; *Gaither* v. *Miles*, 268 Fed. 692.)

This court has held that the words "in contemplation of death," as used in general tax laws imposing a transfer tax, is of property made in contemplation of death of the grantor or vendor, do not refer to that general expectation which every mortal entertains but rather an apprehension which arises from some existing condition of body or some impending peril. (*Bakers Estate*, 163 N. Y. 607.)

In *Spreckels* v. *State*, 30 Cal. App. 363, the court said:

A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death that the property so transferred becomes amenable to the burden; or, as counsel for the respondents with singular aptness states the proposition: "It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax." That is, the expectation of death must be the direct, specific, and immediate animating cause of the transfer.

Applying these principles to the facts in this proceeding, the Board has no difficulty in reaching the conclusion that the decedent did not make the conveyances of real estate to his children in contemplation of death within the meaning of the Revenue Act of 1921.

The State of Illinois instituted proceedings to collect a succession or inheritance tax from the estate of this decedent, which was resisted by these same petitioners.

The Illinois statute imposing the tax, provides:

When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.

On January 7, 1927, the County Court of Tazewell County Illinois, by final decree, unappealed from and the time for praying an appeal having now expired, held upon substantially the same facts as we have before us that the deeds in controversy were not made in contemplation of death and that no inheritance tax on said estate was due the State of Illinois. While such finding is not conclusive upon this Board, it is entitled to weight, especially in view of the similarity of the Illinois statute to the Federal statute on the same subject of taxing gifts, transfers, etc., made in contemplation of death.

The transfers made by decedent on August 30, 1919, were not, in the opinion of the Board, made in contemplation of death within the meaning of the statute. *Philip T. Starck, Executor*, 3 B. T. A. 514.

The evidence shows that the decedent was strong and active, physically and mentally, at the time he made the conveyances to his children, and so remained, for one of his age, until a few months prior to his death, and never seemed to think he was sick at any time.

*Judgment will be entered for the petitioners on 15 days' notice, under Rule 50.*

Considered by SMITH.