IN RE ESTATE OF CARL BRONZYNSKI.
WAYNE COUNTY, APPELLEE, V. ESTATE OF CARL BRONZYNSKI ET AL., APPELLANTS.

FILED NOVEMBER 28, 1927. No. 25283.

*H. W. Siman,* for appellants.

*Fred S. Berry, James E. Brittain* and *C. H. Hendrickson,* contra.

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.
This is a controversy between the county of Wayne and the widow and children of Carl Bronzynski, deceased, over

inheritance or succession taxes. March 14, 1916, and January 17, 1917, Carl Bronzynski conveyed in different parcels by individual deeds to his wife and children 2,640 acres of land in Wayne county, all he owned. He executed a will May 24, 1923, bequeathing to them in different amounts his personal property. He died December 20, 1923, at the age of 73 years, leaving surviving him his widow and all of their children—five sons and four daughters. His will was probated. The value of his personal property at the time of his death was $86,210.62 and of the real estate previously transferred $311,250. The county court of Wayne county found that the deeds were executed by grantor in contemplation of death and subjected both the real estate and the personal property to which grantees and legatees succeeded, less exemption, to succession or inheritance taxes aggregating $2,574.71. Upon appeal to the district court these taxes were sustained. From the judgment of the district court the widow, the children and the executors of decedent's will appealed to the supreme court.

The taxes pertaining to the personal property are not questioned. In deeds conveying 720 acres, life estates were retained and the taxes on these transfers are also conceded to be valid. Deeds for 320 acres were delivered after the death of grantor and these lands too were properly subjected to succession or inheritance taxes. *People v. Shutts,* 305 Ill. 539; *Arnold's Estate,* 83 Pa. Super. Ct. 264; *In re Jones' Estate,* 120 N. Y. Supp. 862; *In re Sharer's Estate,* 73 N. Y. Supp. 1057; *People v. Shaffer,* 291 Ill. 142. Of the entire 2,640 acres, therefore, 1,040 acres acquired by grantees through deeds "intended to take effect, in possession or enjoyment after such death." were chargeable with succession or inheritance taxes under the statute so providing. Comp. St. 1922, sec. 6153. The real controversy involves the rest of the land or 1,600 acres. The fee to this portion of grantor's real estate, except 160 acres, was conveyed without any restrictions to the five sons by duly executed and immediately delivered warranty deeds, dated March 14, 1916, or January 17, 1917. Under them grantees took immediate

possession and thereafter exercised exclusive dominion and control, enjoying the rents and profits as absolute owners. The grantees in these deeds for 1,440 of the 1,600 acres paid grantor $25,000, the payments varying from $4,000 to $6,000 each. The value of the land far exceeded the payments, but the consideration in each instance was a valuable one. Was the succession to the 1,440 acres subject to the taxes imposed? The material part of the statute under which the county acted provides:

"All property, real, personal and mixed which shall pass by will or by the intestate laws of this state from any person who may die seised or possessed of the same while a resident of this state, or, if decedent was not a resident of this state at the time of his death, which property or any part thereof shall be within this state, or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor, or bargainer or intended to take effect, in possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason thereof any person or body corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is subject to a tax, at the rate hereinafter specified." Comp. St. 1922, sec. 6153.

A purpose of the legislature in enacting the law in this form was to prevent evasion of inheritance or succession taxes. Of course, a deed made for the purpose of evading the statute does not prevent the taxing of the succession. As a general rule, the character of a deed in that respect is a question for determination in each particular case. 37 Cyc. 1567; *People v. Danks,* 289 Ill. 542, 7 A. L. R. 1023. The deeds to 1,440 of the 1,600 acres in controversy do not show on their face that they were made in contemplation of death. The issue therefore is one of fact determinable from the evidence and surrounding circumstances. Conveyances not made in contemplation of death, but in good faith without any intention of evading taxation, unless the

transfers themselves are subject to succession or inheritance taxes under specific terms of the statute, are free from such burdens. In determining whether a duly executed and delivered deed absolute in form was made by grantor in contemplation of death, within the meaning of the inheritance or succession tax law, the age of grantor, the condition of his health, the surrounding circumstances, and how long he survived the transfer are material subjects of inquiry. In the present instance, in addition to deeds indicating sales for valuable consideration, grantor's intention is indicated by a conversation with an executor of his will, who testified that grantor said, in substance, March 14, 1916:

"That he, Carl Bronzynski, had too much land to look after and that his boys were then old enough to assume part of the responsibility and that with the money he would get from his boys as consideration for the land, together with other assets, he would have plenty for himself and wife."

Grantor was then about 66 years of age. Previous to his final illness, which lasted 48 hours only, his health had always been good. He lived more than seven years after the making of the deeds. The evidence does not show that he made them "in contemplation of death," as that term is used in the statute. He did not strip himself of property. In providing for the future of both himself and his wife, he retained in his own name under his own control income property worth perhaps $100,000—a competence sufficient for a long period of life. He evidently wanted his sons to share with him the benefits and responsibilities of a large estate—a natural and lawful impulse of a father—but he made ample provision for his own future. The expression, "contemplation of death," is not defined by statute. The universal apprehension of final dissolution is not what the legislature meant. The term may apply to transfers in pursuance of a purpose to defeat inheritance or succession taxes when death occurs in the future. It may also apply to transfers prompted by impending danger, by fatal bodily injuries or afflictions, and perhaps by other conditions, but

does not include absolute and irrevocable deeds not made in contemplation of death and not within any statutory provision authorizing such taxes. This view of the law is supported by the weight of authority and by the better reasoning.

It is argued, nevertheless, that the motive which prompted grantor to make absolute deeds to his five sons was the same motive that prompted him to retain life estates in making other transfers properly taxed. The succession under the transfers retaining life estates was taxable under a statutory clause which does not necessarily apply to the absolute deeds. In effect, the statute provides for a tax on transfers of property by deeds made in contemplation of death and also on transfers intended to take effect in possession or enjoyment after the death of grantor. The undelivered deeds and the deeds retaining life estates were not intended to take effect in possession or enjoyment until after the death of grantor and were therefore properly subjected to the taxes, while the absolute deeds were intended to, and did in fact, take immediate effect in possession and enjoyment upon their execution and delivery, and consequently were not taxable, since they were not made in contemplation of death. The position of the county on this point is therefore untenable.

Was the remaining quarter section included in the 1,600 acres in controversy properly subjected to a succession or an inheritance tax? A life estate therein was transferred by deed to Anna Bronzynski, a daughter, and the remainder to her heirs or, if none, to children of grantor. The consideration for this conveyance beyond the natural love and affection of a father for a daughter was, according to the deed, one dollar. The deed was recorded. Through it grantor parted irrevocably with all his right, title and interest in the 160 acres thus transferred. For the purposes of that conveyance he divided the 160 acres into two estates—the life estate and the remainder. The life estate he deeded to his daughter Anna and the remainder he deeded to her heirs, if any at her death, otherwise to children of grantor. These

two estates in the 160 acres comprised the entire fee which was irrevocably transferred. Except for the difference in considerations, the reasons for holding that the 1,440 acres conveyed by absolute deeds to the five sons of grantor were not taxable apply generally to the transfer of the life estate in the 160 acres to Anna Bronzynski. The right to make in good faith an absolute gift of unincumbered property during the life of the donor is an attribute of ownership and, if not made for the purpose of evading inheritance or succession taxes, or in contemplation of death, or to take effect in possession or enjoyment after the death of donor, the gift is not subject to those burdens. In this view of the law the gift of the life estate to Anna Bronzynski was not taxable under the Nebraska statute. Was the estate in remainder pertaining to the 160 acres exempt under the circumstances? The deed for the remainder did not necessarily mean that estate was intended to, or would, take effect in possession or enjoyment after the death of grantor. Those entitled to the remainder under the deed would have received it before the death of grantor, had the life tenant died first. The life tenant may live beyond her expectancy and in that event the right to possession of the remainder will be postponed to an indefinite time in the future, a contingency which seems too remote and uncertain as a basis for a separate tax on the succession. The conclusion is that the trial court erred in permitting the tax on these transfers to stand. It follows that the taxes on the 1,600 acres in controversy are reversed and the cause remanded for the purposes of a judgment conforming to the views herein expressed.

REVERSED IN PART FOR CORRECTION OF JUDGMENT.