*433 OPINION.
Siefkin :
Before proceeding to a discussion of the principal issue involved in this proceeding there are three minor questions to be settled. One of those questions, the amount of the deduction for executors’ commissions, attorneys’ fees and miscellaneous administration expenses, has been conceded in the respondent’s brief to the extent of $323,186.08 in addition to the amounts which he allowed in *434 determining the deficiency. The details of such amounts are as follows:
Executors commissions_$150, 000. 00
Attorneys’ fees ($152,500, less $75,000 allowed in the 60-rlay notice)_,- 77,500.00
Miscellaneous administration expenses ($109,227.39, pages 1 to 3 of Exhibit 29 attached to depositions, plus $23,845.22, estimated amount of additional administration expenses as itemized at bottom of page 4 of Exhibit 29 attached to the depositions, less $37,386.53 allowed in the 60-day notice)_ 95,686.08
Total_ 323,186.08
The petitioners contend that the additional amount should be $329,180-08, but this increase includes an item of $6,000 on account of a pledge in that amount to Tusculum College which will be considered later. In the computation of the deficiency, therefore, the said deduction should be increased by $323,186.08.
A pledge of $6,000 was made to Tusculum College by Mrs. McCormick by a telegram m which she stated that she would be one of three to give $6,000 each towards a science building. At the time of her death the other two gifts had not been obtained. They were obtained some time after her death and the executors paid the pledge from the funds of the estate and ask that a deduction be allowed for the amount as a debt of the decedent. We do not believe it can be so considered. The general rule undoubtedly is that a subscription or pledge lapses upon the death of the subscriber if that event occurs before there is an acceptance and before a consideration is furnished. See Beach v. Fairburg First M. E. Church, 96 Ill. 177. As to this pledge, the consideration was that like pledges should be obtained from two others, not merely that an effort be made to obtain such pledges. We conclude that the amount was not a debt of the decedent.
The third issue relates to the inclusion in the gross estate of the decedent the property known as the Stanley-McCormick School. The facts as to the acquisition of the title are set out in our findings. While it is clear that Mrs. McCormick had no intention of profiting at the expense of the school, but on the contrary took title in order to make certain that her contributions to it would do the most good, we are unable to hold that the property was conveyed to or received by her in trust. We, therefore, hold that the value of such property should be included in -the decedent’s gross estate. Although we have some doubts as to the value being $44,000, the amount fixed by the respondent, we must affirm his determination in that regard because the evidence which creates those doubts is not sufficient to permit us to say either that the property had no value or what the value was.
*435 The principal issue in this proceeding, both as to the amount involved and the difficulty of solution, is a question as to the inclusion in the gross estate of Nettie Fowler McCormick of an amount of $7,399,306.32, being the value of certain property as determined by the respondent involved in the trust created by her July 27, 1918.
Section 402 (c) of the Revenue Act of 1921 provides:
Sec. 402. Tliat the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated — ■
* * * * * . * *
(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fait consideration in money or money’s worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.
The trust was created July 27, 1918. The decedent died July 5, 1923. The respondent assigned no reason for including the property in the gross estate of the decedent other than that his action was “ in accordance with the law and regulations.” In this hearing he contends that the transfer into the trust was either intended to take effect in possession or enjoyment at or after death or was in contemplation of death.
We are satisfied that the transfer was not in contemplation of death as that phrase has been interpreted by the courts and by this Board. All of the evidence points to the conclusion that the expectancy of death in the near future (and not merely in the usual course of events) was not present and was not the moving cause of the conveyance to the trustees. See Schwab v. Doyle, 269 Fed. 321; Gaither v. Miles, 268 Fed. 692; Meyer v. United States, 60 Ct. Cls. 474, 483; Estate of Lozier, 7 B. T. A. 1050; Estate of John B. Phillips, 7 B. T. A. 1054, and many other cases to the same effect.
We are, therefore, brought to a consideration of the question as to whether the transfer was “ intended to take effect in possession or enjoyment at or after * * * death (whether such transfer or trust is made or created before or after the passage of this Act).”
We are met at the threshold of the inquiry with the decision of the Supreme Court of the United States in Nichols v. Coolidge, 274 U. S. 531; 47 Sup. Ct. 710. The concluding paragraph of the decision is as follows:
This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth *436 Amendment. Brushaber v. Union Pacific R. R. 240 U. S. 1 24; Barclay & Co. v. Edwards, 267 U. S. 442, 450. See also Knowlton v. Moore, 178 U. S. 41, 77. And we must conclude that Section 402 (c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation. Whether or how far the challenged provision is valid in respect of transfers made subsequent to the enactment, we need not now consider.
Since the decision of the Supreme Court we have held in several cases that gifts or transfers made prior to the Act under which the decedent died could not be included in the gross estate. See Edward H. Alsop, Executor, 7 B. T. A. 848; James Duggan, 8 B. T. A. 482; David W. Crews, 8 B. T. A. 949; Northern Trust Co., Executor, 9 B. T. A. 96. See also Estate of Harris, 5 B. T. A. 41, and the recent decision of Judge Lowell in Wilmington Trust Co. v. United States, 28 Fed. (2d) 205. The Circuit Court of Appeals for the Seventh Circuit has recently held to the same effect in Reinecke v. Northern Trust Co., 24 Fed. (2d) 91. The case is now pending before the Supreme Court of the United States, a writ of certiorari having been granted on April 23, 1928.
Except for an ingenious argument of the respondent we might well hold with our prior decisions which we deem in accord with Nichols v. Coolidge, supra, and hold that a trust created in 1918 is not to be included in the gross estate of a decedent dying under the Act of 1921. The respondent’s argument, however, compels us to consider whether or not the retroactive feature condemned by the Supreme Court is present. The argument is based upon the decision of the Supreme Court of Illinois in People v. McCormick, 327 Ill. 547; 158 N. E. 861, construing this trust instrument. The holding of the Supreme Court of Illinois, briefly stated, is that the beneficial interest in the property covered by the trust created by Mrs. McCormick on July 27, 1918, did not vest in her children at that time. It is argued, because the property did not vest in the children at the time the trust was created, that the transfer must necessarily have been as of the date of her death and that, therefore, the application of the act can not be said to be retroactive. There is a fatal flaw in this argument in that the Supreme Court of Illinois did not decide that Mrs. McCormick did not divest herself of all interest in the property but merely decided that the property did not vest in her children until after her death. The latter holding is of no assistance in determining the question which we have before us. The Supreme Court of Illinois was considering the question from the standpoint of the Illinois inheritance tax, which differs from the Federal tax in that it is a tax upon the right to receive, whereas the Federal *437 estate tax is upon the right to transmit. We still have the question “ did Mrs. McCormick, by the instrument of July 27, 1918, part with the possession and enjoyment of the property included in the trust.” The arguments that she did not are based upon the following provisions of the trust instrument:
1. The provision by which she reserved the right to direct the investments. Article 4 (2).
2. The provision by which she reserved the right to request the issuance of proxies on the stock. Article 4 (3).
3. The provision for the accumulation of income and the reservation of the right to dir'ect the payments of income to designated charities. Article 2 (2).
4. The provision by which she reserved the right to be paid a portion of the income of the trust in case her income should fall below $250,000 in any year. Article 2 (1).
5. The provision that should the decedent survive the beneficiaries, the trust -would terminate and she would take the trust property. Article 3.
Provisions similar to the first, second and third provisions above were considered by the Circuit Court of Appeals, Seventh Circuit, in Reinecke v. Northern Trust Co., supra. The court there said:
We are of opinion that the reservations in the 1919 trusts, as above herein enumerated, must be held to be reasonable and prudent provisions which in no way affect or defeat the real purposes of the trusts. The settlor by those reservations took nothing for himself, but each reservation is a pledge on his part or advice and assistance to the trustee for the benefit of the beneficiaries.
See also Shukert v. Allen, 273 U. S. 545.
Before considering the fourth and fifth provisions noted above, it should be noted that Mrs. McCormick’s income never did fall below $400,000 a year and, in fact, she did not survive the beneficiaries. In considering the question, the purpose of the Federal estate tax must be kept in mind. In Knowlton v. Moore, 178 U. S. 41, the Supreme Court said:
Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transmission, or the act of passing of an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested.
We are satisfied that the provisions of section 402 (c) of the Revenue Act of 1921 are to be tested, at least in part, by asking whether the transfers involved are testamentary in character. If it is found that they are not, close scrutiny must be given to such transfers to determine whether they bear any reasonable relation to *438 or afford any reasonable measure of the privilege being taxed by the Federal government. In Schlesinger v. State of Wisconsin, 270 U. S. 230, the Supreme Court said, in holding the Wisconsin tax unconstitutional :■
Gifts inter vivos within six years of death but in fact made without contemplation thereof are first conclusively presumed to be so made without regard to actualities, while like gifts at other times are not thus treated. There is no adequate basis for this distinction. Secondly, they are subjected to graduated taxes which could not be properly laid upon all gifts or indeed upon any gift without testamentary character.
When this test is applied to the facts in this proceeding, we come to the conclusion that the transfer of July 27, 1918, five years before the death of Mrs. McCormick was not testamentary in character and bore no relation to the privilege taxed, and that the property included in the trust was not part of her estate for purposes of the Federal estate tax. We come to this conclusion by looking at the purpose of Congress, as we conceive it, to include as a measure of the estate tax, in addition to those assets which are held at death, only such assets disposed of prior to death as bore a reasonable relation to the privilege taxed. We are confirmed in this conclusion when we consider that Mrs. McCormick completely divested herself of legal title and beneficial ownership five years prior to her death, subject only to certain restrictions and contingencies which, in fact, never operated.
The transfer of assets to the United States Trust Co. on July 27, 1918, by the decedent was not made in contemplation of death or intended to take effect in possession or enjoyment at or after death.
Reviewed by the Board.

Judgment will be entered under Bule SO.

Marquette and Arundell dissent on the fourth point.