ELIZABETH B. CLARKE, APPELLANT, V. FRED P. MARCONNIT . ET AL., APPELLEES.

FILED APRIL 11, 1930. No. 27126.

*Sterling F. Mutz, R. M. Switzler* and *Edward C. Fisher*, for appellant.

*Benjamin S. Baker, Ralph Wilson* and *Lee Kelligar*, contra.

HEARD before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and CARTER and CHASE, District Judges.

GOOD, J.

This is a suit in equity in which plaintiff seeks to have certain deeds of conveyance, absolute on their face, decreed to have conveyed to the grantee the title to the lands therein described in trust for specified purposes. From an adverse decree, plaintiff appeals.

From the record the following pertinent facts appear: George Fred Marconnit and his wife, Mary, residents of Omaha, were the parents of two children, Elizabeth B. Clarke, plaintiff, and Fred P. Marconnit, defendant. In 1909 George Fred Marconnit executed a will, by the terms of which he bequeathed to his wife all of his personalty absolutely and to her devised the possession, rents, income and profits from all of his real estate during the term of her natural life. He devised to the plaintiff, subject to the life use of his wife, the homestead in Omaha, and to his son he devised the residue of his real estate, which consisted of about 835 acres of land, situate in Nemaha and Otoe counties. The latter devise required the son to pay to his sister the sum of $12,000, which was made a charge upon the real estate devised to defendant. In January, 1919, he added a codicil to his will which did not change the terms thereof, except change in the persons nominated to be executors of the will. Six months later he conveyed to his son, by warranty deed, the lands in Otoe and Nemaha counties. In 1924 he departed this life. His will was admitted to probate. The $12,000, mentioned in the will, was not paid by the son to his sister. Some years later Mary Marconnit, the widow, departed this life. This action was instituted by Mrs. Clarke, claiming that the deeds were intended to convey the title to the farms in trust to her brother for the following purposes: To constitute the grantee a trustee to assist in the management of the farms; to avoid payment of inheritance tax, and to divide the lands, after death of Mary Marconnit, between the grantee and plaintiff.

The evidence discloses without dispute that immediately after the deeds were executed, in July, 1919, they were delivered to the grantee, and that he has retained possession of them since that date. It also discloses that at the time of their execution the father stated that within a few days they would go to the farms, inform the tenants thereon of the change in ownership, and arrange with them for the transfer of their relations, as tenants, from the father to the

son. It also appears that within a short time after the deeds were executed the father and son went to Otoe and Nemaha counties, and there interviewed the tenants; that the father informed the tenants that he had transferred the lands to his son and that they should thereafter deal with him respecting the farms. The evidence discloses that from that time on the tenants dealt exclusively with the son and turned over to him the rents and income from the farms. It also appears that about two years after the deeds were executed Fred P. Marconnit opened a joint account in an Omaha bank in the name of himself and father; that at least a part of the rents and income from the farms and other items were deposited in this account; that both father and son were privileged to, and did, check against this account; the father for his individual support and use, and the son for the purpose of making investments by way of mortgage loans. It appears that when the father died there was in this account a sum in excess of $3,000; that the son, who was one of the executors of his father's will, listed the balance in this account as a part of the assets of his father's estate. It also appears that some time subsequent to his father's death Fred P. Marconnit informed plaintiff that he desired to carry out the provisions of his father's will, and that he was ready and willing to pay over to her the $12,000 therein provided, but for some reason the amount was not paid, perhaps because Mrs. Clarke was not satisfied at that time with the disposition that her father had made of his property, and perhaps in the belief that she was entitled to a share in the real estate which had been conveyed to her brother.

With respect to the allegation that the real estate was conveyed for the purpose of defeating an inheritance tax, it may be said that the proposition finds little support in the evidence. The only evidence which would lend any color to the contention is the fact that at the time of the conveyance the grantor was 65 years of age, and that at one time subsequent to the conveyances, in a conversation with a witness, he made a statement that his estate would

not be subject to an inheritance tax, as he had disposed of most of his property. There was no intimation that the disposition had been made for the purpose of evading payment of an inheritance tax. At that time he had an expectancy of approximately 10 or 11 years, and was apparently in fairly good health. There is nothing to indicate that he contemplated an early demise, or that the conveyances were made in anticipation of death. Under the rule announced in *In re Estate of Bronzynski*, 116 Neb. 196, the evidence was wholly insufficient to show that the conveyances were made in contemplation of death. We do not wish to be understood as here deciding that the property may not, in a proper proceeding, be subject to an inheritance tax, but only that the evidence in this case wholly fails to show that it was conveyed for the purpose of creating a trust to evade the provisions of the inheritance tax law.

Plaintiff further contends that the conveyances were made to enable the grantor to rid himself of the burdens of managing the farms. The contention is unsupported either by reason or by fact. The father could have placed the management of the farms in the care of the son without conveying title, and there is no substantial evidence indicating that such was the purpose of the grantor in making the conveyances.

The only evidence to support the charge that the conveyances were given with the intent of making the grantee a trustee to hold title until the death of his mother, and then to make an equal division of the lands between himself and the plaintiff, may be summarized as follows: First, the circumstance that the value of the property conveyed represented the major portion of the grantor's property; second, that the proportion of the property given to the grantee was greatly in excess of that which was given to grantor's daughter by his will; third, the act of the grantee in creating a joint bank account, on which both the grantor and grantee were permitted to draw; fourth, that grantor left unchanged the provision in his will for

a lien, in favor of plaintiff, on the lands devised to the son; and, fifth, a statement made by the grantor some two years after the date of the conveyances wherein he stated, in substance, that he did not desire the Clarkes (meaning his daughter's relatives by marriage) to have any part of his property, and that he could not help his daughter without helping her husband's relatives; that she would receive from $12,000 to $15,000, and no more, from his estate, and that she should receive only the income from this sum until she had reached the age of 45 years. At the time he made this statement grantor retained no property of any consequence, save and except the homestead which was devised to the daughter, subject to the life use by his widow, and perhaps a small amount of personal property which was also bequeathed to his wife. This statement, however, was not made in the presence of the grantee; nor is there any evidence of an agreement between the father and son that the latter should pay the $12,000 charge upon the real estate to the grantor's daughter. The statement does indicate that, in the mind of the grantor, the $12,000 should be paid by his son to his daughter. It is perfectly clear that if the son had taken title to the real estate under the will he would have taken it burdened with the charge therein provided; but it is equally clear that he did not take title under the provisions of the will, but under deeds, absolute in form, which contained no provision requiring him to make payment of any sum to his sister. It is a familiar rule that a grantor cannot, by any act subsequent to the delivery of a deed, invalidate, alter or affect the instrument. 18 C. J. 217. The statement made by the grantor, to the effect that his daughter would receive from $12,000 to $15,000 out of his estate, cannot affect the title to the real estate which he had previously conveyed. It seems reasonably apparent that he believed that the provisions in his will would operate to require his son to pay to his daughter the sum of $12,000. This was a mistaken conception of the law. If, as seems

apparent, it was the belief of the grantor that the daughter would receive from the son the sum of $12,000, it is unfortunate that he did not insert a provision therefor in the deeds and thereby make it a charge upon the land. Notwithstanding this may have been his belief and his intention, this court is powerless to change the effect of the deeds and to read into them something that the grantor did not take the precaution to insert. If the $12,000 is received by plaintiff, as, probably, intended by her father, it will be because the grantee, now knowing that it was the purpose and intent that he should do so, sees fit to carry out the wishes of his father, although he is not legally obligated so to do.

It is argued by plaintiff that, because defendant caused a joint account of defendant and his father to be opened in a bank, into which account defendant paid a part of the rents and income from the farms, this fact shows that the lands were conveyed in trust. This contention cannot be sustained. The money placed in this account was the property of the defendant. It was his to do with as he saw fit. He could have given it to his father absolutely, or to any one else, and he could have placed it in any bank he desired and permitted his father, or any one else, to draw upon it if he so chose. It is probable that, realizing that his father had been generous and liberal with him, he felt it proper to be generous and liberal with his father.

The trial court found, among other things, that while the deeds took effect from the time of their delivery there was an agreement or understanding between the grantor and the grantee that the bequest of $12,000 to the plaintiff, made in the will of the grantor, should be carried out and paid by the grantee, but that, notwithstanding such understanding, the trial court was without jurisdiction to award such bequest or to decree any charge or lien on the land by reason thereof. This particular finding we think is not warranted by the evidence; nor do we agree to the proposition of law that the court was without jurisdiction.

The judgment of the district court denying relief is right, notwithstanding the particular finding and conclusion of law, and it is, therefore,

AFFIRMED.

DEAN, J., dissenting.

I do not agree with the conclusions expressed in the main opinion. It appears to me that the terms of the will of the senior Marconnit provided that the plaintiff shall inherit the homestead, which was of the approximate value of $4,000, and that when plaintiff reached the age of 45 years she should receive the sum of $12,000 from the estate. When the suit was tried plaintiff was past the age of 45 years, but she had never received any part of the $12,000 bequest. The will provides that the son shall inherit certain real estate, but that it shall be subject to the payment to plaintiff of the $12,000, which was bequeathed to her by her father and which was made a specific charge against the real estate. The following provision is in the will. "For the purpose of carrying out the terms of this bequest I hereby give, bequeath and devise unto my said executors hereinafter named (the testator's widow and his son Fred) the said sum of twelve thousand ($12,000) dollars upon the terms and conditions stated in this item of my will. * * * My said executors hereinafter named shall hold said twelve thousand ($12,000) dollars and invest the same as above provided until my said daughter Lizzie Clarke reaches the age of forty-five (45) years."

Some time in July, 1919, the senior Marconnit purported to convey certain farms located in Nemaha and Otoe counties to the defendant. This was six years before his death. The will was written in 1909, and was ratified and confirmed in a codicil which was executed ten years thereafter, namely, in 1919, that being the same year in which the deeds were executed. The defendant, however, testified that he did not have the above named deeds recorded until the year after the death of his father, namely, in 1925, nor did he tell his sister about the deeds until several weeks

after his father had passed away. Clearly the defendant appears to have recognized his sister's rights. I submit that the real estate should be held subject to the $12,000 bequest and that it was the intention of the senior Marconnit that the defendant should inherit such real estate subject to the payment of $12,000 to his sister, the plaintiff herein.